## CARL JOCKHECK et al. v. THE BOARD OF COMMISSIONERS OF SHAWNEE COUNTY et al.

1. COURTHOUSE SITE — *Condemnation — Valid Statute.* Chapter 110, Laws of 1889, is not unconstitutional upon the ground that it contains two subjects, which are not expressed in the title; the condemnation of sites for county buildings and the condemnation of additional ground necessary for the protection of such buildings being germane and connected with the same subject.

2. LOTS — *Excessive Price.* When a board of county commissioners desires to purchase or otherwise obtain certain lots as a suitable site for a courthouse, which have been declared by them as necessary for that purpose, requests the owner to submit a proposition to them in writing, stating his price therefor, and such owner informs the commissioners in writing that "he will accept for the property $16,500," which is an excessive and extortionate price, and the commissioners determine that the price demanded is unsatisfactory and unreasonable, they may proceed under the provisions of chapter 110, Laws of 1889, to obtain the condemnation of such lots.

3. STATUTE, *Ample Authority to Condemn Ground, etc.* Chapter 110, Laws of 1889, authorizes the condemnation of a suitable site for a courthouse, and, also, authorizes the condemnation of additional ground necessary for the protection of such a public building. This statute is ample authority to authorize the condemnation of ground for a part of such a site. The power to condemn ground for a suitable site includes the power to condemn ground for a part of a site, where the county is the owner of lots or ground which, added to the lots or ground to be condemned, will make a suitable site for a courthouse.

4. EMINENT DOMAIN — *Homestead May be Taken.* Under the superior or sovereign power of eminent domain, a homestead occupied by a family as a residence may be taken and appropriated for public use without the consent of the owner, if full compensation is paid.

5. PRIVATE PROPERTY — *Public Use.* Private property taken and appropriated as a suitable site, or a part of a site, for a courthouse, under the provisions of chapter 110, Laws of 1889, is taken for public use.

6. FINDING *as to Necessity, When not Disturbed.* Where a county owns six lots, which the county commissioners propose to use as a site, or a part of a site, for a courthouse, and they determine that additional ground adjoining thereto, consisting of three lots, is necessary to make such site a suitable one for a courthouse, and the judge of the district court, to whom an application is presented for the appoint-

ment of appraisers to condemn such lots or additional ground, also determines that the lots are necessary for a suitable site for a court-house, and subsequently, in an action, the district court, upon a re-examination of all of the proceedings for condemnation, decides that the necessity existed for the condemnation of the lots for a suitable site for a courthouse, *held*, that this court, in reviewing the latter action, will not interfere by declaring that no such necessity existed.

### *Error from Shawnee District Court.*

In 1868, one J. A. Schafer became the owner of lots 127, 129, and 131 Van Buren street, in the city of Topeka, Shaw-nee county, and occupied and used the same with his family as a homestead from the time he purchased said lots until the time of his death, which took place in 1872. The said J. A. Schafer died intestate, leaving Rosa Schafer, his widow, and Helena Schafer, his daughter, who was then less than one year old, as his only heirs-at-law. Rosa Schafer and her said daughter continued to occupy said lots as their homestead until 1874, at which time Rosa Schafer married Carl Jock-heck, one of the plaintiffs in this case, and Carl Jockheck and Rosa Jockheck, his wife, and said Helena Schafer, his stepdaughter, continued to occupy said premises as their homestead from that time continuously until the death of the said Rosa Jockheck, in 1887; said Rosa Jockheck died in-testate, leaving as her only heirs-at-law said Carl Jockheck, her husband, and said Helena Schafer, her daughter, who continued to occupy said premises as their only residence from that time to the present, and are still so occupying said prem-ises, together with a servant girl who has been living with them for the 10 years last past. On the 11th day of May, 1894, the board of county commissioners of Shawnee county, in writing, requested the said Carl Jockheck and Helena Scha-fer to state to the board what they would take for said lots, a copy of which is hereto attached, marked "A." On the 21st day of May, 1894, said Carl Jockheck and Helena Schafer, in response to said request, said that they would take the sum of $16,500 for said lots, and submitted said proposition in writing, a copy of which is hereto attached,

marked "B." Said board did not inform said Carl Jockheck and Helena Schafer whether they would accept said proposition or not, nor did said board, or anyone for them, have any further communication with said Carl Jockheck and Helena Schafer with regard to the purchase of said lots, nor was there any other offer of any kind whatever made by said board to said Carl Jockheck and Helena Schafer for said lots, nor did said board inform said Carl Jockheck and Helena Schafer that it deemed the price put on said lots as unreasonable or unsatisfactory, nor was there any other or further effort of any kind or character made to purchase said lots; but said board placed an order on its record of proceedings on the 22d day of May, the day after said price was submitted to them, in the absence of these plaintiffs and of which they had no knowledge whatever, except as they learned of such proceedings in the daily papers, a copy of which order is hereto attached, marked "C." On the 23d day of May, the said board made an application to the judge of the district court for the appointment of appraisers to condemn said lots. The petition, and the order appointing said appraisers, the order of the court and the report of appraisers are copied in full and set forth in the petition. These plaintiffs had no knowledge of said application or order until after the same had been obtained. Said appraisers so appointed made their report on the 26th day of May, which was filed on said day, a copy of which report is fully set forth in the petition in this action. On the 6th day of June, 1894, the amount of money assessed by said appraisers was deposited by said board with the county treasurer of Shawnee county for the use and benefit of Carl Jockheck and Helena Schafer. On the —— day of June, 1894, said Carl Jockheck and Helena Schafer filed their appeal bond and took an appeal from the award of said appraisers, and afterwards, and before the commencement of this suit, to wit, on the 11th day of June, 1894, said appeal was by them dismissed, and at the time of the commencement of this suit no appeal was pending. The county of Shawnee owned ground for a courthouse site, which had been pur-

chased in September, 1884. Said site consisted of six lots, being a piece of ground 150 feet square. There were other sites in the city of Topeka suitable for courthouse purposes, which could have been obtained by purchase or otherwise, but which the board made no effort whatever to obtain. Said board never sought or inquired with reference to any other site than the one they proceeded to condemn, and which joined the site they already owned. Said board, on the 20th day of September, 1893, provided for submitting a proposition for plans, etc., for a courthouse, a copy of its record of which matter, marked "Exhibit A," is hereto attached. On the 3d day of October, 1893, said board made an order, a copy of which, marked "Exhibit B," is hereto attached. On the 4th day of January, 1894, the said board entered into a contract to build said courthouse with the defendant F. L. Stevenson. The dimension of said proposed courthouse is 173 by 93 feet, which includes porticos, steps, and approaches. A copy of said contract is hereto attached, marked "Exhibit C," and is made a part hereof. Said contractor, by virtue of his contract with said board, was about to take possession of the plaintiffs' said property, against their consent, at the time this action was commenced. The proposed court house is intended to be built partly on the six lots already owned by the county, and partly on the lots in controversy, which were, in fact, condemned as a part of a courthouse site.

The foregoing and the six exhibits aforesaid are the agreed facts herein.

The exhibits A, B and C are as follows:

"A.

"TOPEKA, KAS., May 11, 1894.

"*Carl Jockheck, Esq., and others, owners of lots numbered 127, 129, 131, Van Buren street, Topeka, Kas.:*

"By an action of the board, had October 3, 1893, and recorded at page 335 of journal D, the board found that, in the erection of a new courthouse, it would become necessary for the county to obtain title to lots numbered 127, 129, and 131, Van Buren street, city of Topeka, as additional ground on which to erect said courthouse. The board of county com-

missioners, therefore, acting for the county, respectfully ask that you submit to the board a proposition in writing, stating the price at which you will convey same to the county by full, unincumbered title in fee absolute; the payment to be made in cash, on presentation of deed accompanied by usual abstract, with certificate of county attorney as to the sufficiency of conveyance and character of title.    By order of the board.

[SEAL.]                J. LEE KNIGHT, *Chairman.*
"Attest:  C. T. McCABE, *County Clerk.*"

"B.

"TOPEKA, KAS., May 21, 1894.

*"To the Honorable Board of County Commissioners. of Shawnee County, Kansas:*

"GENTLEMEN—Your communication of the 11th instant, in which you inform us that, in the erection of a new courthouse, it will become necessary for the county to obtain title to lots numbered 127, 129 and 131 on Van Buren street, city of Topeka, etc., has been received; and, in answer to your request that we submit to your honorable board a proposition in writing, stating the price at which we will convey the same to the county by full, unincumbered title in fee absolute, payments to be made in cash, and deed accompanied by usual abstract, with certificate of county attorney as to the sufficiency of conveyance and character of title, we respectfully reply, stating that, in view of the improvements upon said property, the value of other property adjacent, and all the circumstances attending the location, we will take as compensation for said property the sum of $16,500, upon the terms indicated in your letter of inquiry.    Very respectfully yours,

HELENA SCHAFER.
CARL JOCKHECK."

"C.

*"Proceedings of May 22.    Courthouse Site.*

"Now comes on for hearing, the proposition of Helena Schafer and Carl Jockheck to sell to the county lots numbered 127, 129 and 131 on Van Buren street, city of Topeka, as additional ground for the courthouse site, for $16,500; and it appearing to the board that such sum of $16,500 is an unreasonable and unsatisfactory price for said lots, it is by the board ordered, that such proposition of said Helena Schafer and Carl Jockheck be, and the same is hereby, rejected.    It is further ordered, that the county attorney be ordered to com-

mence a suit to condemn said lots, under ¶ 1639, General Statutes of 1889, in district court, Shawnee county."

The other exhibits are omitted.

This action was commenced in the court below on the 11th day of June, 1894, to restrain and forever enjoin the board of commissioners of the county of Shawnee, and F. L. Stevenson, their agents, servants, and employés, from taking possession of the land heretofore described, or in any way interfering with the plaintiffs' use or occupancy of the same; and also that the said defendants, upon the final hearing of said action, be forever barred from setting up any right, title or claim to the property, and that they pay all costs. Upon the 22d day of June, 1894, the motion of plaintiffs for a preliminary injunction against the defendants, as prayed for, was heard and determined, upon the petition and the agreed statement of facts signed by the parties. After argument, and full consideration thereof, the court found in favor of the defendants, and against the plaintiffs, and refused the temporary injunction. Thereupon, the plaintiffs announced in open court that they elected to stand upon their petition and the facts as agreed to, as upon final trial, and gave notice of appeal. The court then rendered judgment in favor of the defendants, and against the plaintiffs for costs. The plaintiffs excepted to the rulings and decision of the court in denying their motion for a temporary injunction, and also in giving judgment in favor of the defendants against themselves. The plaintiffs bring the case here.

*Vance & Campbell*, and *W. C. Webb*, for plaintiffs in error.

*H. C. Safford*, county attorney, and *Quinton & Quinton*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Section 1, chapter 110, Laws of 1889, provides

"That when the board of county commissioners of any

50—53 KAS.

county in this state cannot, by purchase or otherwise, obtain a suitable site for a courthouse, jail, or other county building, or obtain additional ground necessary for the protection of any courthouse or other county building, at a reasonable or satisfactory price, said board of county commissioners may apply to the judge of the district court of the district in which the county is situated, asking for the condemnation of such site, or additional ground to such site, describing the same." (Gen. Stat. of 1889, ¶¶ 1639–1642.)

On May 11, 1894, the county commissioners of Shawnee county notified, in writing, Carl Jockheck and Helena Schafer, the plaintiffs, "that in the erection of a new courthouse it would be necessary for the county to obtain title to lots 127, 129 and 131 on Van Buren street, in the city of Topeka, as additional ground upon which to erect the same," and requested "that they submit to the board a proposition, in writing, stating what price they would convey the same to the county in fee absolute." On May 11, 1894, the plaintiffs informed the county commissioners, in writing, that they would accept for the property $16,500. At a meeting of the county commissioners on May 22, 1894, it was determined that the price demanded for the lots "was unreasonable and unsatisfactory." After the county commissioners could not obtain, by purchase or otherwise, the lots belonging to the plaintiffs as a part of the site for the courthouse, proceedings were had under the provisions of the statute for their condemnation. (Laws of 1889, ch. 110; Gen. Stat. of 1889, ¶¶ 1639–1642.) On the 6th of June, 1894, the amount of the award made by the appraisers was deposited with the county treasurer for the owners of the lots. The county commissioners then attempted to take possession of the lots, and this action was instituted on the 11th day of June, 1894, to prevent them from taking possession or in any way interfering with the plaintiffs' use and occupancy of the same.

I. It appears from the record that the plaintiffs, within 10 days from the filing of the report of the appraisers, appealed from the award, as permitted by the provisions of the

statute.   This appeal was taken after the plaintiffs had knowl-
edge of all of the proceedings of the county commissioners
in condemning the lots.   The appeal enabled the plaintiffs
merely to litigate the question as to the amount of damages
which they should recover, and nothing else.   It did not and
could not disturb the condemnation of the lots.   (*Railroad Co.
v. Martin,* 29 Kas. 750.)   After the appeal was perfected, the
plaintiffs, before commencing this action, dismissed the same.
It is doubtful whether the plaintiffs, having fully recognized.
all of the proceedings of condemnation by their appeal to
determine the amount of damages for the taking of the lots,
can now be heard to question such proceedings.   This, how-
ever, we need not decide.   If, after having chosen to appeal,
they had continued to pursue that remedy, it is clear they
could not have instituted this action.   (*Reisner v. Strong,* 24
Kas. 410.)   Clearly, all irregularities, if any, in the proceed-
ings of the condemnation have been waived.   The only im-
portant question for our consideration is, whether the county
commissioners had authority under the statute to condemn
the lots as a site for the courthouse, or as additional ground
to such site.

II.   It is clearly apparent from the record that the county
commissioners could not obtain the lots by purchase or other-
wise at a reasonable or satisfactory price.   The plaintiffs
demanded for the same $16,500.   The appraisers allowed
$9,000.   The appeal from the award of the appraisers hav-
ing been dismissed, it must be assumed that the award al-
lowed full compensation for the lots.   The price, therefore,
demanded by the plaintiffs was not only excessive, but ex-
tortionate.   If the statue authorizes, as we think it does, the
condemnation of any lots for a site or a part of a site for a
courthouse, then, upon the record before us, proper proceed-
ings were taken by the county commissioners for the condem-
nation of the lots in dispute.

III.   It is insisted that the statute does not authorize the
condemnation of any ground for a part of a site, unless the

additional ground is necessary for the protection of the court-house.   It is urged that

"The statute places a limitation to condemn additional ground.   Having given the power to condemn a site, it then defines when and under what circumstances additional ground can be condemned, and that excludes the condemnation of additional ground for any other purpose."

It appears that prior to September, 1893, the county of Shawnee was the owner of lots 133, 135, 137, 139, 141, and 143, on the northwest corner of Fifth and Van Buren streets, opposite the county jail, and that the lots, with additional ground, were a suitable site for the courthouse.   On the 20th of September, 1893, the county commissioners, having under consideration the advisability of submitting a proposition to the voters of Shawnee county to build a new courthouse, or-dered, for the information of the public, plans to be made and printed for distribution throughout the county, with es-timates for the cost, of a courthouse, to be constructed upon the northwest corner of Fifth street and Van Buren street, on the lots owned by the county, together with additional ground adjoining thereto, to be obtained, if necessary, through con-demnation proceedings.   On the 3d of October, 1893, the board determined that three lots, or 75 feet, fronting on Van Buren street, adjoining the lots owned by the county, were necessary, in connection with the other lots, for a suitable site for the courthouse.   These lots, so fronting on Van Buren street, were the lots, 127, 129, and 131, referred to in the petition.   Subsequently, upon application made to the judge of the district court of Shawnee county, three disinterested freeholders were appointed to appraise and condemn these lots as the site, or as a part of the site, for the courthouse.

The statute authorizing the condemnation of ground for a suitable site for a courthouse is ample authority to condemn ground for a part of a site.   The greater includes the less. The statute not only gives authority to condemn a suitable site for a courthouse, but also adds that additional ground necessary for the protection of a courthouse may be con-

demned.   Evidently the statute intended that, after a site had
been selected, if a courthouse was erected or was being
erected, and additional ground was necessary for the protec-
tion thereof which could not be obtained by purchase or
otherwise at a reasonable and satisfactory price, then the ad-
ditional ground could be condemned.   In this case, the county
owned several lots, which were not of sufficient extent for a
suitable site for a courthouse.   Other lots or ground were
needed to make the site suitable.   Because the county owns a
part of a site which, with additional ground, may become a
suitable site, it is not thereby prevented from obtaining,
under proceedings of condemnation, other lots or ground to
complete the site.   Such a construction of the statute would
necessarily defeat its purpose in some cases.

IV.   It is next insisted that the lots in dispute constitute
the homestead of the plaintiffs, being occupied by them as a
residence, and, therefore, that they are exempt from being
taken or condemned under the provisions of said chapter 110.
Judge Cooley defines the power of eminent domain as "the
rightful authority which exists in every sovereignty to control
and regulate those rights of a public nature which pertain to
its citizens in common, and to appropriate and control indi-
vidual property for the public benefit, as the public safety,
necessity, convenience or welfare may demand."   Waples
says: "The right which belongs to the society or to the sov-
ereign, of disposing, in case of necessity, and for the public
safety, of all the wealth contained in the state, is called the
eminent domain." (Proc. in Rem, ¶ 242.)   Lewis says,
"that eminent domain is not of the nature of any estate or
any interest in property, reserved or otherwise acquired, but
simply a power to appropriate individual property as the
public necessities require, and which pertains to sovereignty
as a necessary, constant and inextinguishable attribute."
(Em. Dom., ed. of 1888, p. 9, § 3.)

The state has been in existence over 30 years, and during all
of that time the power of eminent domain has been exercised
over homesteads in the laying out of highways and locating

railroads. The right to take a homestead under the power of eminent domain has never before been seriously questioned in the courts. As this power is an incident of sovereignty, and, by all the decisions, its existence "is indispensable and incontestable" in every state, it cannot be possible that it was destroyed by the constitution, unless there is an explicit provision prohibiting its exercise. No such provision exists in the fundamental law. Section 9 of article 15, ordaining that a homestead shall be exempt from a forced sale under any process of law, except for taxes, purchase money or improvements thereon, does not, in our opinion, have application. Said section does not destroy or limit this power. In this state a homestead may consist of 160 acres of farming land, or of one acre within the limits of an incorporated town or city; and, if homesteads cannot be appropriated for public use against the consent of the owners, then within the improved and thickly-settled portions of the state the power of eminent domain would have little or no operation. The laying out and construction of public highways and railroads would almost cease, unless excessive or extortionate prices were paid for rights-of-way. In *Railroad Co. v. Anderson*, 42 Kas. 297, the writer of this said:

"In my opinion, condemnation proceedings may be commenced and carried on against the owner of the homestead. The power of the state to appropriate the property is unquestioned, but the right of the owner to be paid for it is secured by the constitution. The power of the state is subject to no restrictions but that of making compensation."

V. Further, it is insisted that the legislature has no power to pass an act authorizing the taking of private property for a courthouse site.

"The necessity, expediency or propriety of exercising the power of eminent domain, and the extent and manner of its exercise, are questions of general public policy, and belong to the legislative department of the government." (Lewis, Em. Dom., § 162.)

The legislature, in providing for the condemnation of pri-

vate property, must determine in the first instance whether the use for which it is to be condemned is a public one. But this determination is not final. Whether a particular use is public or not is a question for the judiciary.

"But property taken for public buildings of all kinds, such as courthouses, jails, public schools, markets, almshouses, and the like, is taken for public use. The right has been questioned in some decisions, but never denied in any decided case." (Lewis, Em. Dom., § 174; Cooley, Const. Lim., 6th ed., ch. 15, p. 655.)

In this particular case, whether the requisite necessity existed to authorize the taking of the plaintiffs' lots was determined by the commissioners of Shawnee county and by the judge of the district court of that county, when he passed upon the application presented to him for the appointment of appraisers to make the condemnation. Subsequently, in this action, the district court of Shawnee county reëxamined the proceedings for the condemnation, and, in refusing the injunction prayed for, affirmed that the requisite necessity existed for the taking of the lots. Under all of these circumstances, this court will not interfere by declaring that no such necessity existed for this compulsory mode to procure or complete the site for the courthouse.

VI. Finally, it is urged that chapter 110 is unconstitutional, because it is alleged that it contains two subjects which are not expressed in the title. This is not tenable. The condemnation of sites for county buildings and additional ground necessary for the protection of such buildings is germane and connected with the same subject.

The judgment of the district court will be affirmed.

All the Justices concurring.