## Speck v. Kenoyer et al.

[No. 20,294.   Filed March 29, 1905.]

1. Eminent Domain.—*Legislative Question.*—It is a legislative question whether in a particular instance private property should be taken for a public use.   p. 433.

2. Highways.—*Public Use.*—Land taken for the establishment of a public highway is taken for a public use.   p. 433.

3. Same.—*Public Utility.—Elements.*—To determine the public utility of a proposed highway the jury should consider the existing ways, the population, location of markets, soil, physical features, the public convenience, the future needs of the community and other elements pertaining to the local needs.   p. 434.

4. Appeal and Error.—*Evidence.—Sufficiency.*—The Supreme Court will not set aside a verdict that a proposed highway will be of public utility when there is evidence from which such conclusion can reasonably be drawn.   p. 435.

5. Constitutional Law.—*Eminent Domain.—Compensation.—Benefits.*—In the assessment of damages for the appropriation of private lands for a public highway, it is proper to take into consideration any benefits accruing to other lands belonging to the owner of the lands so appropriated.   p. 435.

6. Highways.—*Damages.—Benefits to Adjacent Lands Not Included in Remonstrance.*—The owner of lands appropriated for a public highway can not exclude from the consideration of the jury part of his lands benefited by the highway by including in his remonstrance only those lands injured by such highway.   p. 436.

7. Evidence.—*Opinion as to Size of Needed Bridge.—Qualification.*—It is harmless error to permit a witness to testify as to the dimensions of a bridge needed on a proposed highway when on cross-examination such witness qualifies by showing that he is well acquainted with the vicinity and the creek to be bridged.   p. 437.

8. Highways.—*Questions Triable on Appeal from Board.—Evidence.*—On appeal from a decision of the board of commissioners granting the prayer of a petition for the establishment of a public highway and denying a remonstrance for inutility and damages, the remonstrant can not introduce evidence showing that another route can "otherwise be had without departing essentially from the route petitioned for."   p. 437.

9. Appeal and Error.—*Instructions.—How Made Part of Record.*—Where an order-book entry of November 7 shows that the defendant by his attorney "files the written instructions given by the court," and the instructions appear to have been filed with the clerk on No-

vember 6, and the trial of the cause closed October 31, such instructions are not properly identified and can not be considered.   p. 438.

From Newton Circuit Court; *Charles W. Hanley,* Judge.

Petition by Lewis Kenoyer and others for the establishment of a public highway against which Isaac V. Speck remonstrates. From a judgment establishing such highway, remonstrant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*William Darroch,* for appellant.

*Comparet & Higgins* and *Foltz & Spitler,* for appellees.

GILLETT, J.—Proceedings instituted by appellees before the board of commissioners of Newton county to establish a public highway over the lands of appellant. Issues were made by remonstrance on the questions of public utility and damages, and in the circuit court there was a verdict that the proposed highway would be of public utility, and that appellant would not be damaged by its location. Judgment was rendered in accordance with the verdict, and the ultimate questions which are now before us were presented to the lower court by a motion for a new trial.

The first question argued by appellant's counsel is whether the proposed way is shown to be of public utility. The evidence shows that the road, as located, is two and one-quarter miles in length; that it extends from an east and west highway in section one, township twenty-seven north, range ten west, in Newton county, to an east and west highway along the south side of section thirteen, and that it crosses a highway known as the Stone road, which runs between sections twelve and thirteen. The south end of the proposed road is within three miles of Kentland, and would form part of a general system of roads in that vicinity. It further appears that there is no highway running north and south from the west side of section eleven to the east side of section seven, and that there is no north and south highway from the west side of section fourteen to the east side

of section thirteen.   Appellant owns about fifteen hundred acres in sections one, eleven, twelve, thirteen and fourteen, worth from $75 to $100 an acre.   Aside from persons living on his land, it appears that a number of people reside in that vicinity.   There is a public schoolhouse adjoining the intersection of the proposed highway with said Stone road.   The ground along the north part of the projected way is low, with a creek running across it.   The building of a grade and bridge across said low ground and creek would occasion an expense, according to some of appellant's witnesses, of $1,400, although we think there was evidence from which the jury might have concluded that the expense would not be so great.

1.   Where the use is public in its nature, the question as to the necessity for taking private property in a particular instance by virtue of the power of eminent domain is, in its essence, a legislative question.   *Water-Works Co.* v. *Burkhart* (1872), 41 Ind. 364; *Consumers Gas Trust Co.* v. *Harless* (1892), 131 Ind. 446, 15 L. R. A. 505; *LaFayette, etc., R. Co.* v. *Butner* (1904), 162 Ind. 460; *Richland School Tp.* v. *Overmyer* (1905), *ante,* 382; Elliott, Roads and Sts. (2d ed.), §§189, 190, 223; 10 Am. and Eng. Ency. Law (2d ed.), 1066.

2.   The taking of land for the purposes of a public highway affords one of the clearest illustrations of an appropriation for a public use.   "Roads and streets used by the public, with a right in all the public to use them, are undoubtedly public, and private property may be appropriated for the purpose of constructing such ways.   The test is, not simply how many persons do actually use them, but, how many have a free and unrestricted right in common to use them, for, if the public generally are excluded, the way must be regarded as a private one; if the public have the right to use the way at pleasure and on equal terms, it is a public one, although in reality it is little used."   Elliott,

Roads and Sts. (2d ed.), §192. See, also, *Wild* v. *Deig* (1873), 43 Ind. 455, 13 Am. Rep. 399; 10 Am. and Eng. Ency. Law (2d ed.), 1072.

3.   Under the general highway act of this State the right of viewers to lay out highways is limited to such highways as will in their judgment be of public utility, and the want of public utility may be made ground of remonstrance. In this way the question of public utility may become a judicial one, but as the right of the public to resort to the road is the principal, if not the sole, consideration in respect to the fundamental requirement that the use must be public, it results that the question as to whether a proposed highway is of public utility is almost always a question of fact.   The point to be determined is whether, from a public standpoint, the establishment of the way is of sufficient importance, in view of the expense and all other pertinent circumstances, to justify the exercise of the power of eminent domain. Some of the elements which may be considered, as was pointed out in *Opp* v. *Timmons* (1898), 149 Ind. 236, are existing ways, the conditions of population, location of markets, character of the soil and physical features of the locality.   A road is of public utility if required for the public convenience; it is not required that it should be absolutely necessary to the public.   *Green* v. *Elliott* (1882), 86 Ind. 53, 68.   As applied to such a case as this, it may also be considered by the jury whether the time has not already arrived in which the public interest demands the establishment of such further highways as will give to the general vicinity a system of conveniently located highways, as a condition important to the development of the country in the immediate future.   15 Cyc. Law and Proc., 637.   In determining the ultimate question of public utility, it is ordinarily necessary to consider a number of facts, and, as there is usually room for a difference of opinion among reasonable men as to the conclusion to be drawn, it results that the question should ordinarily be submitted to the jury trying the

cause. In this case it was necessary, under the facts, to take the finding of the jury upon the ultimate question of public utility, and, as the court below did not see fit to set aside the verdict, it rests upon a foundation so secure that we can not disturb it. See *Ross* v. *Davis* (1884), 97 Ind. 79; *Moore* v. *Auge* (1890), 125 Ind. 562.

4. It was said by this court in a drainage proceeding: "We must take the judgment of the jury upon the facts, and the only question which we are required to decide upon this branch of the case is, whether the facts are sufficient to entitle the appellee to. a judgment declaring the work to be conducive to the public health and welfare. We are not at liberty to draw inferences of an evidentiary character, for the facts found in the verdict are, as said in *Locke* v. *Merchants Nat. Bank* [1879], 66 Ind. 353, 'the inferential facts.' The conclusions of the jury are conclusions of fact, drawn from evidentiary facts, and these conclusions of fact, and not the evidence, are the proper elements of a verdict." *Zigler* v. *Menges* (1889), 121 Ind. 99, 16 Am. St. 357. The conclusion which the jury saw fit to draw in this case —that the proposed road would be of public utility—was a conclusion that it can not be said as a matter of law was unauthorized, and as a consequence it can not be reviewed on appeal.

5. Appellant remonstrated for damages on account of his lands in sections one, twelve and thirteen, through which the line of the proposed highway was located. He now complains that a witness was permitted to consider his lands in sections eleven and fourteen in testifying as to the value of the lands with and without the road. Upon this subject appellant's counsel says: "It certainly can not be the law that special damages to particular tracts of land can be offset by general benefits to other tracts in the same locality."

In construing the constitutional provision of 1816 relative to compensation for property taken for public use,

it was said in *M'Intire* v. *State* (1840), 5 Blackf. 384: "In ascertaining the extent of the injury, undoubtedly an estimation of the value of the property taken, at the time of taking, is a necessary step; but if the benefits really and substantially resulting to the claimant equal, in pecuniary value, the value of that of which the public has deprived him, we conceive they constitute a just and constitutional compensation for the deprivation-to which he has been subjected." It was in the light of this interpretation that the present Constitution was adopted, and its meaning in such respect is settled. *Indiana, etc., R. Co.* v. *Hunter* (1856), 8 Ind. 74; *Hagaman* v. *Moore* (1882), 84 Ind. 496; *Yost* v. *Conroy* (1883), 92 Ind. 464, 47 Am. Rep. 156; *Hire* v. *Kniseley* (1892), 130 Ind. 295; *Goodwine* v. *Evans* (1893), 134 Ind. 262; *Forsyth* v. *Wilcox* (1895), 143 Ind. 144; *Gas Light, etc., Co.* v. *City of New Albany* (1902), 158 Ind. 268; *Fifer* v. *Ritter* (1902), 159 Ind. 8.

6.  Appellant could not exclude from the consideration of the jury, by the form of remonstrance he saw fit to adopt, all items of benefit which might otherwise be considered as against his damages. Here the land lay in one body, but for the intervening easement of the highway known as the Stone road. Appellant was remonstrating for damages to lands which were contiguous to those he voluntarily excluded from his remonstrance, and the whole property was being used by appellant for a common purpose. Under such circumstances we are far within the authorities in holding the admitted evidence competent. 2 Lewis, Eminent Domain (2d ed.), §475; Elliott, Roads and Sts. (2d ed.), §249. And see *Chicago, etc., R. Co.* v. *Huncheon* (1892), 130 Ind. 529; *Lincoln* v. *Commonwealth* (1895), 164 Mass. 368, 41 N. E. 489; *Cedar Rapids, etc., R. Co.* v. *Ryan* (1887), 36 Minn. 546, 33 N. W. 35; *Union Elevator Co.* v. *Kansas City, etc., R. Co.* (1896), 135 Mo. 353, 36 S. W. 1071; *Chicago, etc., R. Co.* v. *Brunson* (1890), 43

Kan. 371, 23 Pac. 495; note to *Sharp* v. *United States,* 57 L. R. A. 932; *Yost* v. *Conroy, supra.*

7.   Complaint is made that a witness called by appellees was permitted to state that a twenty-foot bridge in the proposed highway would be sufficient to permit the water of said creek to pass through.   While it might admit of question whether the witness had *prima facie* shown himself qualified to express this opinion at that stage of his examination, yet, as the cross-examination showed that the witness had been familiar with the creek and the general conditions of the vicinity for many years, appellant can not now successfully complain of said answer.

8.   During the introduction of the evidence on behalf of appellant he asked a witness who was called by him the following question:   "Did you examine the line a quarter of a mile east of it, as to what kind of a line it would be for a public highway?"   An objection to this question was sustained.   It is doubtful whether the question has been saved, within the rule of practice laid down in *Gunder* v. *Tibbits* (1899), 153 Ind. 591, and other cases, but we prefer to consider the point on its merits.   Under §6743 Burns 1901, Acts 1899, p. 116, it is the duty of the viewers, if they shall deem the proposed highway of public utility, to "lay out and mark the same on the best ground, not running through any person's enclosure of one year's standing without the owner's consent, unless, upon examination, a good way can not otherwise be had, without departing essentially from the route petitioned for."   Under §6750 Burns 1901, §5023 R. S. 1881, the landowner may have new viewers appointed to reconsider the question of the public utility of the proposed highway.   It is our opinion that under this legislation, the cause being tried in the circuit court on issues of inutility and damages; the determination of the question of public utility is limited to the definitive proposition presented, namely, the public utility of the route se-

lected. *Zigler* v. *Menges, supra; Sample* v. *Carroll* (1892), 132 Ind. 496; *Bonfoy* v. *Goar* (1895), 140 Ind. 292; *Wilson* v. *Talley* (1896), 144 Ind. 74; 15 Cyc. Law and Proc., 634.

9. Complaint is made of the giving of certain instructions, but here we are met with the insistence of appellee's counsel that the instructions are not in the record. It is stated in an order-book entry dated November 7, 1903, that the defendant, by his attorney, "files the written instructions given by the court," and they appear to have been filed by the clerk November 6, 1903. The trial closed October 31, 1903. It is evident from other particulars that there has been an attempt to bring the instructions into the record under section one of the act of March 9, 1903 (Acts 1903, p. 338). That section provides that "all instructions requested, whether given or refused, and all instructions given by the court of its own motion, shall be filed with the clerk of the court at the close of the instruction of the jury." We must assume that the purpose of this requirement was to identify the instructions which the court gave, as was required under §542 Burns 1901, §533 R. S. 1881, where no bill of exceptions was filed. *Hadley* v. *Atkinson* (1882), 84 Ind. 64, 66; *Thompson* v. *Thompson* (1901), 156 Ind. 276; *Cleveland, etc., R. Co.* v. *Ward* (1897), 147 Ind. 256; *Ohio, etc., R. Co.* v. *Dunn* (1894), 138 Ind. 18; *Van Sickle* v. *Belknap* (1891), 129 Ind. 558; *Butler* v. *Roberts* (1889), 118 Ind. 481; *Ft. Wayne, etc., R. Co.* v. *Beyerle* (1887), 110 Ind. 100; *Childress* v. *Callender* (1886), 108 Ind. 394; *Blount* v. *Rick* (1886), 107 Ind. 238; *Landwerlen* v. *Wheeler* (1886), 106 Ind. 523; *Aufdencamp* v. *Smith* (1884), 96 Ind. 328; *Weik* v. *Pugh* (1884), 92 Ind. 382; *McIlvain* v. *Emery* (1882), 88 Ind. 298; *Heaton* v. *White* (1882), 85 Ind. 376; *O'Donald* v. *Constant* (1882), 82 Ind. 212; *Supreme Lodge, etc.,* v. *Johnson* (1881), 78 Ind. 110.

No further question remains. Judgment affirmed.