## Evansville, Suburban and Newburgh Railway Company *v.* Evansville Terminal Railway.

[No. 21,781. Filed December 16, 1910.]

1. **Eminent Domain.**—*Street and Interurban Railroads.*—*Voluntary Associations.*—*Corporations.*—An interurban railroad corporation formed under the voluntary associations acts (Acts 1901 p. 289 and Acts 1903 p. 180) has the right to exercise the power of eminent domain. p. 22.

2. **Railroads.**—*Crossings.*—*Agreements Concerning.*—*Question of Fact.*—*Appeal.*—Whether an interurban railroad company made a good-faith effort to purchase a right of crossing over defend-

ant's railroad, is a question of fact, and the trial court's decision thereon, on conflicting evidence, is conclusive on appeal.   p. 23.

3.  RAILROADS.—*Effort to Purchase Right of Crossing.—Evidence.* —Evidence that the attorney for the plaintiff interurban railroad company went to the office of defendant railroad company's manager to purchase a right of crossing over defendant's road, that the consultation continued until defendant's manager requested a blue print of the proposed crossing, that it was agreed that such manager should call at such attorney's office the next morning and examine the blue print, but such manager failed so to do and instead wrote a letter virtually evading the matter and declining further negotiations except upon specified conditions, sufficiently shows an attempt to purchase a crossing over such road.   p. 23.

From Warrick Circuit Court; *Roscoe Kiper,* Judge.

Action by the Evansville Terminal Railway Company against the Evansville, Suburban and Newburgh Railway Company.   From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. E. Iglehart, Edwin Taylor, E. H. Iglehart, George D. Heilman, George A. Cunningham* and *Hatfields & Hemenway,* for appellant.

*Albert W. & Arthur F. Funkhouser* and *Robinson & Stilwell,* for appellee.

HADLEY, J.—This was a proceeding by appellee to condemn a crossing over appellant's railroad for the use of appellee in constructing and operating a railroad.

Appellee is a corporation organized under the voluntary associations act of March 9, 1901 (Acts 1901 p. 289) and the supplement thereto of March 7, 1903 (Acts 1903 p. 180, §4286 Burns 1908).

The main question presented challenges the right of appellee, as a creature of the voluntary associations act, to condemn real estate.   This identical question was considered and decided in favor of appellee in the case of the *F. W. Cook Investment Co.* v. *Evansville Terminal Railway* (1910), *ante,* 3, and upon the authority of that case, the like question presented here must be determined against appellant.

Appellant also insists that the evidence does not show that appellee made a *bona fide* effort to agree with appellant, with respect to a purchase of said right of crossing, before commencing this proceeding. Whether the effort made was sufficient, or in good faith, was a jurisdictional question of fact for the presiding judge, and his affirmative finding on this point must be accepted by this court as controlling under the state of the evidence appearing in the bill of exceptions. There is but little conflict in the evidence upon the point.

It is, in substance, shown by both parties that one Funkhouser, a duly authorized representative of appellee, on the afternoon of September 14, 1908, called upon Mulhausen, appellant's general superintendent, at the company's office, and informed him that the object of the call was to ascertain if their respective companies could come to an agreement with respect to the crossing of appellant's railroad with appellee's railroad, then in process of construction. A general conversation was held on the subject, but Mulhausen expressed himself as unprepared to submit a proposition, for the reason that he did not know just how the crossing would affect his company's road, and particularly as to the angle at which it was proposed to effect the crossing. Mulhausen inquired for a blue print showing the particulars of the crossing, and Funkhouser not having one proposed to procure one and have it at his office next morning at 9 o'clock, and the parties separated with the agreement that Mulhausen would call next morning at Funkhouser's office, examine the blue prints, and submit a proposition. To avoid his waiting, it was agreed that upon Funkhouser's arrival with the blue print he should give Mulhausen notice thereof by telephone.

Funkhouser reached his office next morning about 9 o'clock with the blue prints, and at once called for Mulhausen over the telephone, and was told that he had gone out, but could be called over another telephone, which being called, infor-

mation was given that he was not there.  Funkhouser again called Mulhausen's office, and left word for him that when he came in he should call the former at his office.  Funkhouser called Mulhausen at his office three more times, without results, and about 11 o'clock of the same morning a boy delivered to Funkhouser, at his office, the following letter:

                              " Evansville, Indiana,
                                    September 15, 1908.
Mr. Albert Funkhouser,
    City.
Dear Sir:—
    Resuming the conversation had between you and me late yesterday afternoon, you stated to me that the Evansville Terminal Railway Company wants to cross the Evansville, Suburban and Newburgh Railroad, but did not state the exact point of crossing, and you did not have any blue print or other proper description of the proposed crossing so that I would be able to form any opinion concerning it.  I thereupon asked you if you had any blue print of the proposed crossing.  You said ' No,' but you would have such blue print by 9 o'clock this morning, and I asked you if you would furnish me a copy of such blue prints, and you said, 'No,' you would not, but that I could come to your office and see it if I wanted to.  I have no desire to place any unnecessary obstruc-  •
tion to the crossing of our railroad by any other railroad company authorized by law to cross, and I am perfectly willing to fairly consider and discuss with you, or any representative of your company, any crossing which you propose to make, but I submit that you should furnish to me for the use of my company a proper description of the manner of crossing, including a blue print.  In your statement to me you gave no such description.  Until I am able to see what your company proposes to do, you cannot expect from me any further answer.
                              Yours truly,
                                    Gus Mulhausen, Mgr."

    Mulhausen admitted, on cross-examination, that he prom- ised Funkhouser to call at the latter's office about 9 o'clock a. m., and examine the blue print of the proposed crossing, and that he neither called, nor sent by telephone or other- wise any explanation, but instead went to see his attorney

and spent the forenoon with him, up to the time the foregoing letter was prepared and sent by a boy to Funkhouser. This proceeding was begun on the evening of the same day the letter was received.

It is true that events followed each other rapidly after the matter of agreement was taken up, but the conduct of Mulhausen, in failing to keep his promise to call and examine the blue prints, or send any explanation of his conduct, and the spirit of the letter he subsequently sent to Funkhouser, considered together, may reasonably be construed as indicating a feeling of hostility to any further discussion of the crossing question, and we think the court was warranted in arriving at that conclusion.

Judgment affirmed.