DAHL ET UX. ET AL. *v.* NORTHERN INDIANA PUBLIC SERVICE COMPANY.

[No. 29,729. Filed March 24, 1959. Rehearing denied May 8, 1959.]

---

406

*William J. O'Connor* and *Galvin, Galvin & Leeney,* of counsel, both of Hammond, for appellants.

*Lawyer, Friedrich, Petrie & Tweedle,* of Hammond, and *George E. Hershman,* of Crown Point, for appellee.

BOBBITT, J.—Appellee brought this action to appropriate an easement over certain lands owned by appel-

lants for a right-of-way to construct and maintain electric power lines for the distribution of electric energy to the public in general for heat, light, power, telephone and other purposes.

Appellants filed objections to appellee's complaint and thereby raised the following issues: (1) Was the easement necessary for the purpose for which it was sought? (2) Did appellee make a "good faith" effort to purchase the easement sought?

After a trial on the issues presented by appellants' objections to the complaint, the trial court overruled the objections, and from such interlocutory order this appeal is prosecuted.

Two questions are presented by the assignment of errors:

*First*: Was the evidence sufficient to establish the necessity of the appropriation of appellants' land for the use for which it was sought?

Acts 1929, ch. 218, §1, p. 800, being §3-1713, Burns' 1946 Replacement, provides, in pertinent part, as follows:

> "Any corporation organized under the law of the state of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy, . . . is hereby authorized and empowered to take, acquire, condemn and appropriate land, real estate or any interest therein, for carrying out such purposes and objects together with all accommodations, rights and privileges deemed necessary to accomplish the use for which the property is taken, . . ."

Appellants assert that under this statute appellee was required to show, by competent evidence, that the proposed taking of the easement was necessary to accomplish the use and purpose for which it is sought.

See: *Shedd* v. *Northern Indiana Public Service Co.* (1934), 206 Ind. 35, 41, 188 N. E. 322, 90 A. L. R. 1020.

They rely upon *Indianapolis Water Co.* v. *Lux* (1946), 224 Ind. 125, 64 N. E. 2d 790, to support their assertion here, and cite a statement from 224 Ind. at page 134, as follows:

".  .  . we hold that the question of necessity *in this case* was by statute made a judicial one." (Our italics.)

In the Lux Case appellant sought to acquire the fee simple title to all of appellees' land described in the complaint for the purpose of constructing and maintaining a reservoir. Objections were filed to plaintiff-appellant's complaint alleging that the property sought to be condemned was not necessary to the maintenance of such reservoir, nor was such property necessary for any other project which was owned and operated by the appellant. This court in arriving at the above quoted conclusion reasoned as follows: (page 133 of 224 Ind.)

"An eminent authority has said, '.  .  . if neither the constitution nor statute requires it, the landowner cannot resist the condemnation of his property on the ground that there is no necessity for the proposed work or improvement for which it is sought, or that it will not be of any public utility, convenience or advantage.' Lewis, Eminent Domain (3rd Ed.) §597; see also *Speck* v. *Kenoyer* (1905), 164 Ind. 431, 73 N. E. 896; *The Water Works Company of Indianapolis* v. *Burkhart* (1872), 41 Ind. 364; *Smith* v. *State* (1935), 209 Ind. 80, 198 N. E. 69. And it has been held that 'The delegation to a state agency of the right to exercise the power of eminent domain carries with it the authority to determine the necessity for its exercise to accomplish an authorized purpose, and the question of such necessity is not for judicial determination.' *Root* v. *State, supra.* [(1934), 207 Ind. 312, 192 N. E. 447, 448.]

"Again it is said 'The expediency of constructing a particular public improvement and the extent of the public necessity therefor are clearly not judicial questions; but it is obvious that if property is taken in the ostensible behalf of a public improvement which it can never by any possibility serve, it is being taken for a use that is not public, and the owner's constitutional rights call for protection by the courts.' 10 R. C. L. 184. 'The power to condemn is not of course a power without limitations. It could not be invoked to condemn land out of all proportion to all necessities.' *Chicago, etc., R. Co.* v. *Baugh, supra.* [(1911), 175 Ind. 419, 94 N. E. 571.] But the statute granting the power of eminent domain may make the question of necessity a judicial one. *Speck* v. *Kenoyer, supra.*"

The allegation in the objections in that case that the property to which the fee simple title was sought was not necessary to the maintenance of the reservoir or for any other project owned or operated by the appellant raised the issue that the property sought was not for a public purpose and appellant was, therefore, attempting to act outside the scope of its authority. This then presented a question pertaining to the legality of the taking and was one which the courts could properly consider. This is clearly not the situation in the case at bar.

It is true that "In limiting the power of appropriation to that which is necessary, it is manifest that it was the legislative purpose to prevent the abuse of the power by making appropriations for speculative, monopolistic, or other purposes, foreign to the legitimate objects contemplated by the corporation's charter." *Eckart* v. *Fort Wayne, etc., Traction Co.* (1914), 181 Ind. 352, 359, 104 N. E. 762. However, none of these questions are raised by appellants' objections to the complaint herein.

The rule applicable here is succinctly stated in

*Guerrettaz* v. *Public Service Co. of Ind.* (1949), 227 Ind. 556, at page 561, 87 N. E. 2d 721, as follows:

"All questions concerning the expediency of taking private property for public use are exclusively for the legislature. Unless the action ■ of the legislature is arbitrary, and the use for which the property is taken is clearly private, the courts will not interfere."

In *Slentz et al.* v. *City of Fort Wayne et al.* (1954), 233 Ind. 226, at page 231, 118 N. E. 2d 484, this court reaffirmed the general rule which has long been established and consistently followed in Indiana, quoting from *Bragg* v. *Weaver* (1919), 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135, as follows:

" 'Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as ■ the state may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the 14th Amendment. (Citing authorities.)' "

And, further, at page 232 of 233 Ind.:

"The necessity and expediency of taking property for public use is a legislative and not a judicial, question." (Citing authorities.)

The statute [1] vests discretion in the appellee, utility, herein, to take or appropriate property for public use, and if in its judgment the property herein ■ sought to be appropriated was necessary to distribute electric energy to the public, appellee had the right to condemn, and its judgment therein cannot be questioned or superseded by the courts except for fraud, capriciousness or illegality. *Slentz et al.* v. *City of Fort Wayne et al., supra* (1954), 233

---

1. Acts 1929, ch. 218, §1, p. 800, being §3-1713, Burns' 1946 Replacement.

Ind. 226, 233, 118 N. E. 2d 484. Rhyne, Municipal Law, Eminent Domain, §17-6, p. 395.

There is no charge here that appellee acted outside the scope of its powers or that its actions were fraudulent, capricious or unlawful.

The complaint describes the particular strip of land over which an easement is sought and the purposes for which it is to be used.

Roth Morris, general right-of-way engineer, testified for appellee that the demand for electric service in the "Schneider DeMotte" area has increased "over three times in the past ten years;" that the company expects the demand to increase and that it is necessary to construct additional facilities to take care of the increased demand.

We think the allegations of the complaint[2] and the evidence above summarized sufficient to establish a presumption of necessity. It could be overcome only by a showing that appellee's actions herein were fraudulent, capricious or illegal. This appellants have failed to do.

*Second*: Was the evidence sufficient to establish that appellee was "unable to agree for the purchase" of the easement sought?

Acts 1935, ch. 76, §1, p. 228, being §3-1702, Burns' 1946 Replacement, provides, in pertinent part, as follows:

> "If such a person, corporation or other body shall not agree with the owner of the land . . . touching the damages sustained by such owner, as provided in the last section, the person, corporation or other body so seeking to condemn may file

---

2.   This court has held that the filing of the complaint itself implies that the appellee deemed the appropriation of the land sought, necessary. *Eckart* v. *Fort Wayne, etc., Traction Co*, (1914), 181 Ind. 352, 104 N. E. 762.

a complaint for that purpose . . . . Such complaint shall state:

. . .

"Sixth. That such plaintiff has been unable to agree for the purchase of such lands or interest therein . . . ."

The complaint herein alleges that plaintiff-appellee "has endeavored to purchase an easement for a right of way" over the lands of defendant-appellants and "has been unable to agree with them for the purchase thereof."

We agree with appellants that an effort to purchase the property sought to be acquired is a condition precedent to the right to maintain an action to condemn; *Moore* v. *Ind. & Mich. Electric Co.* (1951), 229 Ind. 309, 312, 95 N. E. 2d 210; and that the burden was on appellee herein to show a good faith effort to purchase and an inability to agree. *Joliff* v. *Muncie, etc., Light Co.* (1914), 181 Ind. 650, 654, 105 N. E. 234.

However, George Ogborn, assistant to the manager of real estate for appellee, testified, in substance, that he went to Belshaw, Indiana, on July 30, 1958, and handed signed copies of appellee's Exhibit No. 1 to Fred A. Dahl, Fred H. Dahl and Nona Dahl; and that he handed an extra copy of said document to Fred A. Dahl for Abbie Dahl. In addition Ogborn testified that he offered to buy the easement described in the complaint from Fred A. Dahl but that Mr. Dahl said "he would sign the easement, but that he would not sign the damage receipt." Ogborn further testified:

"We offered to buy this easement and he [Fred A. Dahl] said it was enough money for the easement, but he wanted damages in addition, and Mr. Morris told him that this amount of money that we were offering included the damages, and so he

asked what would happen if he did not accept this. We told him we would have to proceed with condemnation of the property, so I gave him this written offer, pointed out that it was signed by our vice-president, Mr. Shaefer, and showed him that if we didn't hear from him within ten days, condemnation proceedings would be instituted, and I showed them that the description of the easement was in this written offer."

This witness further testified that the same offer was made to Fred H. Dahl and Nona Dahl, his wife, and in substance the same oral statements were made to them as were made to Fred A. Dahl.

Appellants contend that an offer should have been made to Fred H. Dahl and Fred A. Dahl for an easement over the tract situated in the northeast quarter of Section 31, and a separate offer made to Fred H. Dahl and Nona Dahl, his wife, Fred A. Dahl and Abbie Dahl, his wife, for the easement over the northwest quarter of Section 31, because the east 375 feet of the easement strip is in the northeast quarter of Section 31 and is owned by Fred H. Dahl and Fred A. Dahl, and the west approximately 2640 feet of the easement strip is in the northwest quarter of Section 31 and is owned by Fred H. Dahl and Nona Dahl, husband and wife, and Fred A. Dahl and Abbie Dahl, husband and wife.

This contention is without merit.

The written offer, plaintiff-appellee's Exhibit No. 1, provided that appellee "offers to purchase for the sum of $500.00, an easement for a right of way, with the right of access thereto," for the purposes specified in the complaint and over the property therein described and, further, that if the offer was not accepted within ten days it would be necessary to institute condemnation proceedings. This offer was addressed

to Fred H. Dahl and Nona Dahl, his wife, and Fred A. Dahl and Abbie Dahl, his wife.

The tracts of land over which the easement runs are owned jointly by appellants, and appellee made the offer to purchase to the appellants jointly and delivered a copy of the written offer to Fred A. Dahl, Fred H. Dahl and Nona Dahl, and left a copy with the husband of Abbie Dahl to be delivered to her.

The offer made by appellee was for the entire easement and no reply was made thereto by any of the appellants. This was sufficient to show that appellee was unable to agree with appellants for the purchase of the easement sought. *Illyes* v. *White River Light, etc., Co.* (1911), 175 Ind. 118, 93 N. E. 670; *Evansville, etc., R. Co.* v. *Evansville, etc., Railway* (1910), 175 Ind. 21, 93 N. E. 282; *Lowe* v. *Indiana, etc., Power Co.* (1926), 197 Ind. 430, 445, 151 N. E. 220; *Public Service Co.* v. *Recktenwald* (1919), 290 Ill. 314, 125 N. E. 271, 8 A. L. R. 466.

Appellants have failed to show reversible error and the interlocutory order of the trial court overruling appellants' objections and appointing appraisers must be affirmed.

Judgment affirmed.

Landis, C. J., Achor, Arterburn and Jackson, JJ., concur.

NOTE.—Reported in 157 N. E. 2d 194.