THE STATE OF MONTANA, ACTING BY AND THROUGH THE STATE HIGHWAY COMMISSION OF THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* GERALD R. FRADET; ROBERT LAWRENCE FRADET; FIRST NATIONAL PARK BANK OF LIVINGSTON; AND WILLIAM E. BUELL, ET AL., DEFENDANTS AND RESPONDENTS.

No. 11514.
Decided March 11, 1969.
451 P.2d 826.

Robert L. Woodahl, Atty. Gen., Daniel J. Sullivan (argued), Charles F. Secrest, Helena, for appellant.

Packwood & Bjertness, Otis Packwood (argued), Billings, for respondents.

MR. JUSTICES CASTLES delivered the Opinion of the Court.

This is an appeal from an order made by the district court of the Thirteenth Judicial District in Stillwater County and from an order denying and refusing a rehearing of such order.

The order determined that the State failed to negotiate to purchase a parcel of land prior to bringing an action in eminent domain; therefore, the State's request for a preliminary order of condemnation of the property sought to be acquired should be denied.

In August 1967, defendant Robert Fradet was the owner of two parcels of land which would be affected by the construction of an interstate highway near Columbus. These parcels were some five miles apart. Negotiations concerning the acquisition of one parcel had been commenced with Robert Fradet in August 1967, and were continuing in September. During this time, on August 30, Robert Fradet and his wife transferred ownership to the other parcel of land to their son, defendant Gerald Fradet, who at the time was in the armed forces in Viet Nam. The senior Fradets continued to farm the land claiming an oral sharecrop lease of some sort.

In October, a right-of-way agent of the Highway Commission went to the Fradets' home in Columbus to discuss the appraisal of the son's parcel. He was informed by Robert Fradet that he would have to contact the son. Following this, letters were sent to Gerald and to Mr .and Mrs. Fradet offering to purchase the property necessary for the interstate construction. No replies were received.

The State, in its description of taking and order of condemnation, showed that a tract of land containing 12.97 acres, and a tract of land containing 1.57 acres were necessary for construction of the controlled access highway. The tract of 1.57 acres was for an easement for a trunk ditch of the Columbus Irrigation District and is a 50 foot strip adjacent and paralleling the tract of 12.97 acres sought to be taken.

On October 17 a letter was written and sent to Gerald Fradet in Viet Nam which recited the 12.97 acres and referred to an

enclosed construction map which had the 12.97 acres colored in.
The letter also proposed that the tract of 12.97 acres of culti-
vated irrigated land was valued at $490 per acre for a total of
$6,355.30, and depreciation to the remainder was $977.70, for
a total offer of $7,333. The letter went on to recite possible lien
rights of others and that the offer would be paid into court
for determination of the entitlement of the parties.

Also referred to as enclosed in the letter, besides the deed
for 12.97 acres, was a claim for payment and a permit to con-
struct an irrigation channel. The enclosed map, as noted above,
had the 12.97 acres colored, but did not have the 1.57 acre 50
foot strip (which the enclosed permit to construct an irrigation
channel covered) colored; although the map clearly shows the
irrigation channel strip. Gerald sent this letter to his parents
in Columbus, but did not reply to it.

On December 8, 1967 another letter was sent, addressed to
Gerald in Viet Nam and to Robert and Evelyn Fradet in Co-
lumbus. In this letter a map was enclosed showing the 12.97
acres in color with the value of the land as $7,333, the same
as before. Again, the 1.57 acre strip was clearly shown on the
map but not colored; but no other reference was made to it
in the letter.

On December 13, 1967, counsel for the three Fradets wrote
to the Highway Department seeking clarification of the letters
previously sent to Mr. Fradet. We do not have the letter in
evidence, but in a reply of December 18th, the chief right-of-
way agent referred to the lien holders, making it clear that no
money would be paid to the Fradets, but only into court. No
discussion appears as to the ditch. Gerald Fradet never answered
the State's correspondence other than through counsel in his
letter of December 13.

The condemnation action was filed on January 19, 1968;
Gerald was served while he was home in Columbus. This time
the map showed the 50 foot strip in color.

On February 7, the defendants filed various motions, basic-

ally contending that the State had not made offers of negotiation on the whole amount; that is, 12.97 acres and 1.57 acres. Therefore, they contended that the court lacked jurisdiction to determine "necessity".

The trial court held a hearing and subsequently made findings of fact and conclusion of law. In the findings the trial court found:

"III

"That the above listed two letters are only attempts to purchase or negotiate the interest of these defendants by the Montana State Highway Department; that the State Highway Commission, State of Montana, did pass a resolution entitled Condemnation Order, which included a description of taking directed to an area across the lands of these defendants containing 12.97 acres and an additional 11.57 acres being sought by the State Highway Commission of the State of Montana and that the map attached to the complaint is similar to the map sent to defendants accompanying the letter dated December 8, 1967 above described, but the map attached to the complaint in addition to having the 12.97 acres colored had the additional 1.57 acres colored in a different color thereon.

"IV.

"That no negotiation or offer was ever made to any of these defendants for the above mentioned 1.57 acres.

"V.

"That the area sought by condemnation is different and greater than the interest sought in the letters directed to these defendants and the map directed to these defendants."

The trial court concluded as a matter of law that:

"A.

"That it is necessary for the State of Montana to offer or negotiate for the purchase of the interest in land being sought by it in proposed condemnation proceedings prior to passing its Condemnation Order and filing suit.

"B.

"That the State of Montana failed to negotiate or offer to purchase a parcel of land for which a condemnation order was issued and that the area sought by condemnation exceeded by over 10% the area sought by offer or negotiation.

"C.

"That such failure to make such negotiation or offer is jurisdictional."

Immediately after the findings were filed, an affidavit of disqualification was made. Exceptions were made and a motion for a new trial filed. The new judge, Judge Martin, denied the motion in an order and this appeal followed.

Before we discuss the issues determinative of this appeal we shall observe that defendants in highly technical arguments attack the right of appeal, the form of the briefs, and other matters with which we shall not concern ourselves, other than to comment that the effort to confuse the merits highlights delaying tactics. The entire dispute seemingly revolves around the alleged lien rights of certain of the defendants and in reality does not involve the paramount problems of necessity or value.

The issues on appeal are stated by plaintiff as follows:

1. In a condemnation action brought by the State of Montna, does the district court have the power to review the administrative determination of the Montana State Highway Commission that the land sought could not be acquired at a price deemed reasonable to the Commission?

2. Was the court in error in finding that the State did not negotiate for the proposed 1.57 acre take for an irrigation channel change?

3. Was the court in error in finding that the area sought to be acquired by the condemnation proceeding was greater than the area proposed in letters sent to the individual owner?

4. Was the court in error in holding that a failure to negotiate *further* is jurisdictional to the issue of necessity and thus

by a finding of no further negotiation, deny the State necessity to acquire the land sought?

5. What does the court's order mean? That is, has necessity been denied for the entire area sought to be acquired or only the area of 1.57 acres sought for a channel change?

6. What constitutes sufficent negotiation in eminent domain proceedings?

As we view the issues, we need not answer the first question posed because, if in fact the evidence discloses that the State ngotiated for the 50 foot irrigation channel permit the district court was in error in its findings and conclusions.

As to questions 2, 3, and 4 above, the trial court found, in short, that no negotiation or offer was ever made for the easement for the irrigation channel.

Defendants argue in their words:

"The defendant Gerald Fradet, while serving in Viet Nam received 2 letters from the State Highway Commission. Each of these letters offered a sum of money for 12.97 acres of his land. A map accompanied the one and it was colored to show 12.97 acres on it. The letters, on the one hand, indicated that the State Highway Commission would not pay any sum of money except into Court where this defendant would be required to bring action to receive the money. The second letter did not mention any such payment into the Court and therefore a request was made to find out whether or not money could be received unencumbered. The answer was no, that it could not be paid over directly to Mr. Fradet. Based upon a lis pendens filed some 28 years before, the State Highway Commission was denying any sum of money to this defendant without his bringing further action. Unless the State has accomplished service recently the two other defendants named in this action, being Mr. William H. Buell and the First National Park Bank of Livingston, which is defunct, neither have been served and joined as a party. [These parties were named as defendants, but apparently have not been served.] This would indicate how

seriously the State of Montana considers this lien when they don't even join these defendants by service. Then to go further, the State of Montana through its Highway Commission, after writing two letters offering to deposit money for a total of 12.97 acres into court and coloring the map to show what acreage would be taken, instituted by an order of condemnation an action to take not only 12.97 acres, but an additional 1.57 acres. Apparently it is the position of the State of Montana in grasping at straws to indicate that because they mentioned in one letter that Mr. Fradet's signature would be required on a permit to construct an irrigation channel and in a letter offering 12.97 acres to be purchased also indicates that there is an offer to purchase this 1.57 acres. If that is the case, then the State of Montana is guilty of the most blatant underhanded dealing. There is no indication in that letter that Mr. Fradet would lose an additional 1.57 acres. If they attempted to obtain 1.57 acres for a right of way for ditch purposes and construction by the inclusion of this one short partial line included in a sentence of a multi-paragraphed letter, then they should be ashamed of themselves and, of course, the court cannot and does not give any support to this."

The foregoing quote of defendants' position may be one view of the evidence, but is it a reasonable one? The fact is there are lien rights, and their validity has not been determined. The Constitution provides in Art. III, § 14, that the money be paid into court. The entire record makes it obvious that the only real dispute is as to whether the Fradets or the lien holders will receive the money.

Previously we noted that the maps clearly show the irrigation channel with a width of 50 feet. The failure to color it would not, under the circumstances here, mislead or deceive anyone. Note too, that the senior Fradets, during negotiations conveyed the property to their son although they kept possession under what Mr. Fradet called an "oral agreement" for "20 years or whatever we want". The right-of-way agent positively testified

that he discussed with the senior Fradet the irrigation channel and it was included in the damage to the remainder figure. Then too, the letter clearly referred to the irrigation channel easement. The permit enclosed for signature described it. All in all, it just is not reasonable to view the evidence other than that the State negotiated for the irrigation channel easement. The inquiry by counsel's letter of December 13 makes it clear that the real problem was not the channel easement, but rather the direct payment of the money to Fradets.

In State v. Whitcomb, 94 Mont. 415, 22 P.2d 823, this Court discussed the problem as follows:

"The evidence was ample and sufficient to justify the trial court in finding that plaintiff could not acquire by purchase the right of way. * * *

"The provision of the statute requiring the plaintiff in a condemnation proceeding to attempt to acquire the right of way by purchase does not mean that it must be impossible to buy the right of way at any price, however large. It means that the owner must either be unwilling to sell at all, or willing to sell only at a price so large as, in the good judgment of the plaintiff or plaintiff's agents, is excessive. * * * The object of this statutory requirement is to give both parties a fair opportunity of coming to terms before instituting suit, which usually involves delay and costs. * * * All that is required is a fair effort to negotiate an agreement and, upon the failure so to do, the requirements of the statue are satisfied. Under somewhat similar conditions it was held in the following cases that an inability to purchase existed within the meaning of statutes like unto our own: Louisville, etc. Ry. Co. v. Postal Tel. [Cable] Co., 68 Miss. 806, 10 So. 74; Todd v. Austin, 34 Conn. 78; Trinity College v. City of Hartford, 32 Conn. 452; Jockheck v. Board of Commissioners, 53 Kan. 780, 37 P. 621; Evansville, etc., Ry. Co. v. Evansville Terminal Ry. Co., 175 Ind. 21, 93 N.E. 282."

Nichols in his treatise on eminent domain sets out the Mon-

tana Rule as the general rule and cites a number of later cases from other jurisdictions in support thereof. See 6 Nichols on Eminent Domain, 3rd Ed., Section 24.621 at page 91.

The Whitcomb case is important also in its holding that where the landowner was aware of the land sought to be taken without actually having a detailed description of the land, the Court held that his knowledge of the take was sufficient to put him on notice as to the amount of land required for highway purposes.

In the instant case the State made even more of an effort to purchase and negotiate than was held sufficient in the Whitcomb case. Thus, it is seen that the State made a fair effort to negotiate and that the statutory requirements were satisfied.

Thus, we must conclude that the district court was in error in finding that no negotiations were had and that the showing of necessity was not made.

The order of the district court is reversed with directions to strike the findings of fact and conclusions of law and enter a preliminary order of condemnation.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, BONNER, and JOHN CONWAY HARRISON, concur.