[Civ. No. 23379. Second Dist., Div. Two. May 27, 1959.]

JOSEPH HEFFRON et al., Appellants, v. LOS ANGELES TRANSIT LINES (a Corporation), Respondent.

Ellis J. Horvitz, Max Candiotty and S. M. Dana for Appellants.

Henry R. Thomas and Henry F. Walker for Respondent.

HERNDON, J.—Appellants sued to recover damages for the death of their 12-year-old son who was killed when, in some unexplained manner, he came into contact with a bus owned and operated by respondent Los Angeles Transit Lines. The trial court made findings of fact which included a finding that the operator of the bus was not negligent at the time and place of the accident, i.e., ". . . that at the said time and place the said bus . . . was operated in a careful and prudent manner . . ."

Appellants concede the sufficiency of the evidence to support the quoted finding, but on their appeal from the judgment they contend that the trial court erred (1) in sustaining respondent's objections to certain written interrogatories which appellants served upon respondent for discovery purposes shortly before the date of trial; and (2) in denying appellants' motions made during the trial seeking an examination of certain documents in possession of respondent's counsel.

The main issue in this case and the one to which counsel have directed the greater part of their arguments is simply this: did the trial court abuse its discretion in sustaining respondent's objections to some 52 interrogatories which were served upon respondent only a few days before the date of trial? It appears that the ruling of the trial court was based primarily upon the conclusion that appellants' interrogatories were untimely and tardy in that they were served at so late a date that respondent's objections thereto came on regularly for hearing on the date previously set for the commencement of the trial.

The facts bearing upon the reasonableness of the ruling under discussion may be stated briefly. This action was commenced on November 2, 1956, nearly 10 months after the child's death. Respondent's answer was filed on December 21, 1956. A pretrial hearing was held on September 25, 1957, and at the conclusion of this hearing the cause was set for trial on November 26, 1957. The pretrial conference order recited that the parties were ready for trial and made no reference to any discovery proceedings remaining to be taken except that arrangments would be made prior to November 1,

1957, for respondent to examine the bicycle which decedent was riding on the date of the accident. On November 26, 1957, both parties appeared in the master calendar department and announced "ready for trial," but due to a congested calendar the court, on its own motion, ordered the trial continued to February 24, 1958.

Among the new discovery statutes enacted at the 1957 session of the Legislature, and made operative January 1, 1958, was Code of Civil Procedure, section 2030, providing that "[a]ny party may serve upon any adverse party written interrogatories to be answered by the party served . . ." The section further provides, among other things: "Within 10 days after service of interrogatories a party may serve written objections thereto together with a notice of hearing the objections at the earliest practicable time. Answers to interrogatories to which objection is made shall be deferred until the objections are determined."

On February 5, 1958, appellants served upon respondent a set of 52 written interrogatories. Respondent's objections to the interrogatories were filed on Monday, February 17, 1958, and were noticed for hearing on Monday, February 24, 1958, which was the date previously set for the commencement of the trial. It appears that compliance with the usual requirement of a five-day notice of hearing prevented an earlier hearing on the objections. Under then effective rules of the Los Angeles County Superior Court, all such matters were heard on specified days in Department 38.

On February 24, 1958, at 9:15 a. m. the cause was called for trial in the Master Calendar department and both sides announced ready. The presiding judge transferred the cause to Department 64, the trial department in which Judge Weil presided. On the same morning the objections to the interrogatories came on for hearing in Department 38 before Judge Gumpert. Since the record indicates that the trial was commenced in Department 64 at 9:45 a. m., we infer that the hearing on the objections in Department 38 was concluded between 9:15 and 9:45 a. m.

The interrogatories were quite comprehensive. They sought, among other things: (1) discovery of the names of any witnesses to the accident; (2) an examination of any statements made by such witnesses; (3) information concerning respondent's rules for taking statements of witnesses, its procedures in making investigations and the date counsel was retained; (4) information concerning the results of respondent's inves-

tigation of the accident and whether photographs were taken; (5) information concerning any physical examination of the bus driver and any records relating to the mechanical characteristics of the bus which figured in the accident.

The objections to the interrogatories were also quite extensive. The first objection went to all of the interrogatories and was made upon the ground that they were filed ". . . so late and so close to the date of trial (February 24, 1958) as to make the same improper and tardy and to constitute an undue interference with the orderly process and conduct of the Court and its calendar." In addition, some 53 specific objections were interposed on various grounds including privilege, incompetency, lack of relevancy or materiality, and infringement of constitutional guaranties against unreasonable searches.

Judge Gumpert sustained respondent's objections to the entire set of interrogatories. According to a statement made by appellants' counsel during the course of the trial, the ruling was based primarily upon the tardiness of the service of the interrogatories. However, the court expressed the view that respondent's objections on the ground of privilege were valid at least with respect to a number of the interrogatories. Appellants did not move for a continuance either in the Master Calendar Department or in the trial department.

In the light of the circumstances above recited, we hold that Judge Gumpert's ruling constituted an entirely reasonable exercise of the discretion which the trial courts must exercise in the proper control of discovery proceedings. Without reasonable judicial control, the instruments of discovery are susceptible to abuse and may be utilized for purposes of delay, annoyance and harassment. If a reasonable control is exercised, the salutary purposes of discovery will be served, abuses will be prevented and undue interference with orderly procedures will be avoided.

The decisions indicate that under the Federal Rules of Civil Procedure the trial court may properly exercise its discretion in sustaining objections to interrogatories on the ground that they were served too late. (*United States* v. *W. E. O'Neil Const. Co.,* 1 F.R.D. 529, 530; *Security & Exchange Com.* v. *Timetrust, Inc.,* 33 F.Supp. 590.) In 7 Cyc. Federal Procedure, 3d ed., page 476, section 25.469, it is said: "Interrogatories served long after commencement of the action and a short time before the case will be reached for trial have been held to come too late." In Barron and Holtzoff, Federal

Practice and Procedure, Rules edition, volume 2, page 470, section 773, it is said: "An objection that interrogatories were served too late must be determined by the court in the exercise of its sound discretion, there being no specific provision on this point."

The federal practice of course is not controlling here. But it does illustrate the need for the discretionary power for which respondent argues, and ". . . our courts [are] free to consider those decisions for such persuasive value as their reasoning may have." (*City & County of San Francisco* v. *Superior Court,* 161 Cal.App.2d 653, 657 [327 P.2d 195].) Like the Federal Rules, our statute does not specify a definite time within which interrogatories must be served, nor does it expressly authorize the trial court to reject interrogatories tardily served. But, of necessity, as we have pointed out, a substantial area of discretion must be vouchsafed to the trial judges to compel promptness within reasonable limitations.[1]

Under former Code of Civil Procedure, section 1000, which was superseded in 1957 by the new discovery statutes, the trial court was vested with a wide discretion to determine the conditions under which discovery and inspection of documents would be allowed. As stated in *Union Oil Co.* v. *Superior Court,* 151 Cal.App.2d 286, 292 [311 P.2d 640]: "[T]he rule is well established that the 'trial court's action with respect to an inspection sought under section 1000 is discretionary within the field of reason and justice, that all intendments are in favor of the validity of the court's order, and that the order will not be interfered with unless a clear abuse of discretion is shown.' " (See also *Union Trust Co.* v. *Superior Court,* 11 Cal.2d 449, 463-464 [81 P.2d 150, 118 A.L.R. 259].)

An analogous situation is presented in the statutory requirement that proceedings be stayed until a nonresident plaintiff files a cost bond requested by defendant. (Code Civ. Proc., § 1030.) That statute does not specify the time in which a request for cost bond must be filed, nor does it authorize the trial judge to reject the defendant's request as untimely. But in *Straus* v. *Straus,* 4 Cal.App.2d 461, 463 [41 P.2d 218, 42 P.2d 378], defendant filed a request for a bond the day before the case was set for trial. Although no bond was filed, the

---

[1] "In view of the wide discretion vested in trial judges to protect against abuse, as well as to enforce discovery, the significance of an able trial bench to sound and just judicial administration is further emphasized." (Louisell, *Discovery Today,* 45 Cal.L.Rev. 486, 514.)

court proceeded to try the case at the time set. In upholding the trial court's action, this court held that defendant ". . . waived his right to make such demand, in the absence of some affirmative showing which would excuse the delay. A defendant has no right under the section cited to cause 'a continuance of the trial or delay proceedings or interfere with the business of the court' without good cause shown.'' Thus undue delay in making a demand for a cost bond may operate as a waiver of the right. (*Straus* v. *Straus, supra,* 4 Cal.App.2d 461; see California Civil Procedure Before Trial, p. 238.) Similarly, in the exercise of its judicial discretion the trial court may deny an untimely request to amend the pleadings ". . . in the absence of a satisfactory excuse for the delay in making application to amend." (*Davies* v. *Symmes,* 49 Cal.App.2d 433, 440 [122 P.2d 102] ; *Manha* v. *Union Fertilizer Co.,* 151 Cal. 581, 584 [91 P. 393].)

As the foregoing discussion indicates, the practical necessity for the exercise of a sound discretion in the proper judicial control of procedural machinery has long been recognized. (See *Hays* v. *Superior Court,* 16 Cal.2d 260, 264-265 [105 P.2d 975].) The circumstances of the instant case provide a classic illustration of that necessity. Had Judge Gumpert overruled respondent's objections and required that the interrogatories be answered, there would have been an inevitable delay in the trial. A motion for a continuance in the trial department almost certainly would have been made. In this light it seems most reasonable to regard appellants' late service of their interrogatories, and their answering ready for trial prior to a ruling on the objections, as sufficient to constitute a waiver of any right to further discovery through means so tardily invoked. The new discovery law was signed by the Governor on July 6, 1957. Counsel for appellants, knowing that the new law would become operative on January 1, 1958, and knowing the trial of this action had been continued to February 24, 1958, could and should have had their interrogatories prepared so that they could be served very promptly after the new law became effective. The record is devoid of any showing of excuse or justification for their failure so to do.

At the trial a Mrs. DeKorven was called as a witness for appellants. After she had testified to her observations relating to the circumstances of the accident, counsel for appellants elicited the information that a Mr. West, representing respondent's insurer, had interviewed her and had made notes during the interview. Mrs. DeKorven testified that she

had never signed any statement, and that she did not know what Mr. West had written during their conversation. At this point appellants' counsel requested that he be permitted to examine whatever writing Mr. West had prepared. Respondent opposed the request and the court denied it.

Appellants now argue that there was meager and conflicting evidence on the issue of negligence and "[i]t may well be that such disclosure would lead plaintiffs to the discovery of sufficient evidence to establish defendant's negligence." However, Mrs. DeKorven was appellants' witness and she testified fully as to her recollection of the accident. Even assuming that the investigator's notes were subject to plaintiffs' right of inspection (*cf. City & County of San Francisco* v. *Superior Court, supra,* 161 Cal.App.2d 653, 655; *Holm* v. *Superior Court,* 42 Cal.2d 500, 507 [267 P.2d 1025, 268 P.2d 722]; *Union Oil Co.* v. *Superior Court, supra,* 151 Cal.App.2d 286, 292) appellants have failed to indicate in any manner how they were prejudiced by their inability to inspect the investigator's notes. Mrs. DeKorven did not read or sign any statement. Appellants claimed no right to impeach her testimony and asserted no need to refresh her recollection. This assignment of error must be rejected.

■ Marshall Wiltgen, the driver of the bus, was called as a witness for the defense. On cross-examination, Wiltgen testified that after the accident he had made a report pursuant to respondent's rules. Appellants then moved to examine said statement to which motion respondent objected on the ground of privilege. Counsel stipulated that the court might determine the question of privilege on the basis of the affidavits which respondent had filed in support of its objections to appellants' interrogatories. These affidavits developed at considerable length the procedures followed by respondent and its insurance carrier, the Transit Casualty Company, in conducting investigations of accidents. They disclosed an agreement between respondent and its insurance carrier whereby the latter agreed to defend respondent against claims and lawsuits arising from accidents and was given the right to make investigations for the purpose of enabling it to prepare defenses to such claims and suits. It was stated that the insurance contract required respondent to cooperate with the insurance carrier in securing witnesses, obtaining statements, etc. One of said affidavits contained the following averments: "That all of the investigation with respect to this accident and the resulting litigation has been done by Transit Casualty Company. That

most of the investigation of this action was by Burke West, who is also an attorney at law. That, from experience, said Transit Company has learned that each accident in which an injury has been involved, is a potential lawsuit, for which reason Transit Casualty Company, in its investigation of accidents, including the securing of statements from witnesses, is motivated primarily by its desire to properly prepare a defense for possible litigation. For that reason, all witness statements are transmitted to attorneys for said Transit Casualty Company and are retained by the attorney who is selected to defend said litigation. The requirement that operators of busses and streetcars secure names and addresses of witnesses, where possible, has been adoptd by Transit Casualty Company in order that the above purpose may be fulfilled.''

It also appeared from the affidavits that the bus driver made his report of the accident in triplicate. Two copies of the report went to respondent's statistical department, and were destroyed after statistical data were taken therefrom. The third copy went to the attorneys for respondent's insurance carrier in accordance with the agreement above mentioned for use in preparing for the defense of litigation pending or in prospect.

 The applicable rule by which the validity of the claim of privilege must be determined in such circumstances has been stated as follows in *Holm* v. *Superior Court, supra,* 42 Cal.2d 500, 507: ''In any given situation it is necessary that a determination be made concerning the facts asserted as a basis for the privilege. This determination is for the trial court in the first instance. Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly.

 If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. The question then is whether the conclusion of the trial court on the facts is correct or has resulted in an abuse of discretion.''

 In the instant case there can be no question but that the affidavits set forth facts more than sufficient to support the trial court's implied finding that respondent's dominant purpose in obtaining and preserving the driver's statement was that it might be transmitted as a communication to the attorneys designated by its insurance carrier for use in the

performance of professional responsibilities in defending respondent against a potential claim. (*Holm* v. *Superior Court, supra,* 42 Cal.2d 500, 509; see also *Jessup* v. *Superior Court,* 151 Cal.App.2d 102, 109 [311 P.2d 177]; *Union Oil Co.* v. *Superior Court, supra,* 151 Cal.App.2d 286, 292 [311 P.2d 640].) The driver's statement evidently set forth ". . . his version of the accident and thus clearly is at the very heart of the attorney-client privilege." (*City & County of San Francisco* v. *Superior Court, supra,* 161 Cal.App.2d 653, 656.) Although the point has not been raised on this appeal, it may be observed that in such circumstances as are here involved the transmission of a privileged communication to the attorney through the agency of an insurance carrier does not destroy the privilege. ▮ The prevailing rule has been stated as follows: "According to the weight of authority, a report or other communication made by an insured to his liability insurance company, concerning an event which may be made the basis of a claim against him covered by the policy, is a privileged communication, as being between attorney and client, if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him." (Anno. 22 A.L.R.2d 659, 660; 58 Am.Jur. 282, § 503, and 279, § 498; and see *City & County of San Francisco* v. *Superior Court,* 37 Cal.2d 227, 236-237 [231 P.2d 26, 25 A.L.R.2d 1418].) ▮ The trial court did not err in denying appellants' motion to inspect.

Affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 22, 1959. Gibson, C. J., was of the opinion that the petition should be granted.