STATE EX REL. INDIANA DEPARTMENT OF CONSERVATION
*v.* BARBER ET AL.

[Nos. 30,472 and 30,473. Filed August 17, 1964. Rehearing
denied November 24, 1964.]

*Edwin K. Steers,* Attorney General, and *Harold L. Folley,* Deputy Attorney General, for appellant.

*Gray & Waddle* and *Carl M. Gray,* of Petersburg, for appellees.

MYERS, J.—This is an appeal of two actions consolidated in the Supreme Court under Rule 2-7, whereby, for the purpose of proceedings in this court, both causes will appear in the record as of the appellees named in this case.

The suit was started by the State of Indiana on the Relation of the Indiana Department of Conservation in the Daviess Circuit Court, Daviess County, Indiana, for the condemnation of land owned by appellees, which land was sought by the Department of Conservation for the purpose of a Fish and Game Area. It was alleged that, prior to the filing of the complaint, the Department had passed a resolution determining that certain real estate in Daviess County was necessary and proper for the establishment of what is known as the "Glendale State Fish and Game Area."

The Department attempted to purchase the real estate owned by appellees before filing the complaint, but was unable to reach an agreement as to the purchase price or as to the amount of damages, if any, appellees would sustain. Thus, the complaint in condemnation was filed on June 20, 1962, asking for the appointment of appraisers and to have such proceedings as were necessary in order to acquire fee-simple title to the real estate owned by appellees.

On the 6th day of July, 1962, appellees appeared by counsel and filed written objections in two paragraphs. They also asked for a jury trial upon the issues of fact.

The objections are primarily based upon the charge that the Department had acted capriciously, unlawfully,

unreasonably and without legal authority in passing a resolution to establish the Glendale Fish and Game Area including appellees' real estate when such inclusion was not necessary to the establishment of the Area. Appellees asked that the objections be sustained and the proceeding against them be dismissed.

The resolution by the Department stated that appellees' property was so situated that it would be in a lake bed to be flooded, or in the adjoining area thereto, where the Department was planning to complete a 1300-acre lake to provide fishing and hunting on surrounding lands and flood control.

The court denied appellees' request for a jury trial except as to the question of damages. There was a hearing before the court which resulted in certain findings that a portion of appellees' land was not reasonably necessary for the Department's purposes in that the project could be maintained without the use of that real estate, while the remainder was found necessary. Judgment was entered upon the findings and appellees' objections were sustained. A motion for new trial was filed by appellant asserting that the decision or finding of the court was not sustained by sufficient evidence and was contrary to law. Error was also asserted in admitting into evidence over appellant's objection certain testimony by appellees' witnesses, all of which was set forth particularly in the motion. On September 10, 1963, the motion for new trial was overruled and this appeal followed.

Appellant argues that the Legislature has delegated to the Department of Conservation by statute the right and power of eminent domain, Burns' Ind. Stat., §§60-725 and 60-720, 1961 Replacement; that therefore the Department is expressly empowered to exercise such power " . . . Whenever the conservation commission shall deem it necessary or proper . . . "; that the

extent of judicial review of the Department's exercise of that power is severely restricted by the Constitution and is limited to an investigation of whether the Department's conduct is arbitrary, capricious or unreasonable; that the question of necessity lies "wholly" within the discretion of the Department acting under the powers delegated to it by the Legislature. As authority for these propositions, it cites the following cases: *Wampler* v. *Trustees of Indiana University* (1961), 241 Ind. 449, 172 N. E. 2d 67; *Dahl et ux. et al.* v. *Northern Ind. Pub. Serv. Co.* (1959), 239 Ind. 405, 157 N. E. 2d 194; *Slentz et al.* v. *City of Fort Wayne et al.* (1954), 233 Ind. 226, 118 N. E. 2d 484; *The Cemetery Co.* v. *Warren Sch. Twp. et al.* (1957), 236 Ind. 171, 139 N. E. 2d 538; *Hallett* v. *Calvert* (1934), 207 Ind. 25, 191 N. E. 77; *Root* v. *State* (1934), 207 Ind. 312, 192 N. E. 447.

Appellant says it is important to note that the court's finding in the instant case did not contain any finding that the proposed appropriation was arbitrary, capricious or unreasonable. It merely found that the project could be established and maintained without the portion of land in question. It is argued that the State or condemning authority need only make a prima facie case which cannot be disregarded except to find that the taking is arbitrary, capricious or unlawful.

It is appellees' position that the objections filed by them raised a question of fact for the court to determine as to whether or not the purchase of real estate described in the objections was necessary for the purpose of establishing and maintaining the Glendale Fish and Game Area. They contend that if it was not necessary to appropriate that portion of appellees' land, the Department acted arbitrarily, capriciously, unreasonably and unlawfully. Appellees do not deny that the Legislature delegated authority to the Department to

exercise the right of eminent domain, but they strongly urge that the Department does not have the right to exercise eminent domain for the purpose of acquiring private property which is not reasonably necessary to be used in carrying out its project. When it does so, they argue, the Department is acting beyond the scope of its authority delegated to it by the Legislature, and the court has jurisdiction to determine as a question of fact whether the Department exceeded its authority.

The record reveals that the State through its Department of Conservation had acquired around six thousand acres for the Glendale Fish and Game Area. Of this, a sizeable area was to be used for wildlife refuge, hunting and fishing, and thirteen hundred acres were to be used for a lake. The edge of the lake would come within 175 or 200 feet of appellees' buildings on property sought to be excluded from the appropriation.

Appellees placed two building contractors, a carpenter, two realtors and a soil conservation contractor on the witness stand who testified as to the value of appellees' property, its economic worth, and the fact that in their opinion the acquisition of this land would not be necessary to the efficient operation of the lake. There was a stipulation that fourteen additional witnesses would testify on behalf of appellees that the tract comprising seventy-two acres, with a modern house, barn and other buildings thereon, was not necessary to the Glendale Fish and Game project. It was provided that these opinions were based on the economic value of the land and that the witnesses were familiar with the proposed project. This testimony and the stipulation were admitted over objections. It is to be noted that all these witnesses were local people who did not claim to be experts in the matter of eminent domain regarding the establishment of fish and game reserve projects.

Appellant had as witnesses the Director of the Division of Fish and Game, Department of Conservation, together with an employee of the Department for twenty-three years who had worked on the Glendale project since it started, and the Assistant First Engineer of the Engineering Division of the Department. They all testified as experts, giving reasons for the selection of this property as a part of the project. They stated that the general area was an exceptional site from the standpoint of the small ratio of cost per acre to acres of water impounded for the lake; that consideration was taken of the distance from the water and the land needed for the proper management of such a project as this; that buffer zones were needed around a water area especially where dealing with windblown soil as here; that appellees' property provided such a buffer zone; that there would be need of stringent soil conservation practices on the drainage area, which was one of the reasons for establishing a project of this size; that if appellees' property was omitted from the project, it would be considered as an "in-holding" and would be dangerous for hunters and wildlife; that appellees' land could be used as a service area for storage of materials and equipment, being geographically suited for such; that an in-holding would present many safety problems, i.e., hunters coming up against private property to the hazard of the owners thereof, the need for patrolling if children should fall in the lake, fire hazards and the like; that the presence of human beings on private in-holdings would present problems in the maintenance of wildlife. These and other matters had been considered by the Department when the land was condemned.

The trial court had jurisdiction to consider the objections filed by appellees, but it was restricted in its

review as to whether the condemnation proceedings were legal, whether the Department had authority to condemn their property, and if the property was to be taken for private or public purposes. *The Cemetery Co.* v. *Warren Sch. Twp. et al., supra.* It also had power to question whether the condemnation was fraudulent, capricious or illegal. *Slentz et al.* v. *City of Fort Wayne et al., supra,* at page 233 of 233 Ind., at page 488 of 118 N. E. 2d.

The trial court had no power to determine the necessity to appropriate land except as such taking is found to be arbitrary, capricious, fraudulent or otherwise unlawful. In *The Cemetery Co.* v. *Warren Sch. Twp. et al., supra,* this court said as follows (at page 188 of 236 Ind., at page 546 of 139 N. E. 2d):

> "The courts have the right to determine the *legal authority and right* under which the power of eminent domain is exercised. This does not mean, however, that the courts may assume the administrative act of determining the *necessity or reasonableness* of the decision to appropriate and take the land. To us, this appears to be a matter for the determination of the legislature or the corporate body to whom the legislature has delegated such a decision. We do not think the court has power to inquire into the wisdom of propriety of such judgment unless a question of fraud or bad faith is raised as where an attempt is made to show that the property taken will not be used for a public purpose, or the proceeding is a subterfuge to convey the property to a private use."

In *Wampler* v. *Trustees of Indiana University, supra,* the following was said (at page 454 of 241 Ind., at page 70 of 172 N. E. 2d):

> "The question of the necessity or expediency of a taking in eminent domain lies within the discretion of the Legislature and is not a proper subject for judicial review. Consequently appellants

here cannot show in defense of the present proceedings that a quantity of land less than that described in the complaint would suffice, or that the University owned other land which might have been converted to parking space instead of appropriating appellants' land for such use." (Citing authorities.)

Appellees allege in their objections that the Department acted "capriciously, unlawfully and unreasonably." However, the court did not so determine. In sustaining appellees' objections, the court made the following finding:

" . . . that the material allegations contained in their exceptions are true and that the following described real estate is not reasonably necessary to the establishment and maintenance of the Glendale Fish and Game Area, and that said Fish and Game Area can be established and maintained without the appropriation of the real estate belonging to the defendants and hereinafter described and that said real estate would not be of public use, which said real estate is more particularly described as follows to-wit: . . . ."

On reviewing the evidence presented, we can find nothing which would indicate that the Department's action was fraudulent or illegal. Even by implication, we cannot find that it was arbitrary or capricious.

To act "capriciously" has been defined as to act without apparent motive, suddenly, impulsively, according to whim or fancy, and not guided by steady judgment, intent or purpose. See Webster's Third New International Dictionary, page 333. The word "arbitrary" is defined in Black's Law Dictionary, Fourth Edition, page 134, as follows:

"Means in an 'arbitrary' manner, as fixed or done capriciously or at pleasure; without adequate determining principle; not founded in the

"nature of things; nonrational; not done or acting according to reason or judgment; depending on the will alone; absolutely in power; capriciously; tyrannical; despotic; . . . . Without fair, solid, and substantial cause; that is, without cause based upon the law. . . . not governed by any fixed rules or standard."

The testimony of the Department's witnesses, all of whom were specially qualified in their field, reflected anything but capriciousness or arbitrariness in the Department's determination to appropriate appellees' land for Fish and Game purposes. Other reasons for including the seventy-two acres belonging to appellees herein were clearly stated and based upon facts which were not challenged or refuted. Those witnesses who testified for appellees apparently were all well-intentioned people, neighbors, and, no doubt, some of them friends, but who were all laymen in the field of eminent domain. The objections to their statements concerning the economic value of the property and the necessity of the appropriation should have been sustained as being an invasion of the administrative branch of government pursuant to proper delegation of power by the Legislature. These statements were insufficient to authorize the trial court to substitute its judgment for that of the Department on the question of necessity.

We find that the decision of the trial court was contrary to law. The judgment sustaining appellees' objections to the condemnation and appropriation of their seventy-two acres of land, together with that property belonging to the other parties involved herein, is reversed, and the court is ordered to sustain appellant's motion for new trial; and for further proceedings not inconsistent with this opinion.

Judgment reversed.

Achor, C. J., and Arterburn and Landis, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 200 N. E. 2d 638.