ROBERT M. JENSEN, ET UX. *v.* INDIANA &
MICHIGAN ELECTRIC CO.

[No. 670S133. Filed January 18, 1972. Rehearing denied March 27, 1972.]

600

*Fred G. Donnersberger, Wilson, Benne, Feingold & Donnersberger,* of Hammond, for appellants.

*William F. Kane, Jr., T. H. Clifford, Jr., Lucas, Clifford & Wildermuth,* of Gary, *Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder,* of Fort Wayne, for appellees.

ARTERBURN, C.J.—This is an appeal from an eminent domain proceeding commenced in 1969 by the appellee electric company to acquire a strip of land across appellant's property for the purpose of construction of an electrical transmission line. The complaint was filed on December 10, 1969. The landowners filed their objections to the complaint on December 31, 1969. Trial on landowners objections was set for January 29, 1970. On January 27, 1970, two days prior to the date set for the trial to begin, the landowners filed a Motion for Continuance "until all discovery is complete." On March 9th, the appellant filed sixty-four [64] interrogatories. The appellee, on March 20th, filed a Motion to Deny Requests for Answers to Interrogatories. On March 31st, the motion was sustained and the cause was set for hearing on April 22nd. The court did not sustain the motion until a hearing on the motion had been completed.

On April 22, 1970, the cause was commenced and appellee presented one witness. At the conclusion of the testimony offered by appellee's witness the appellant filed a Motion for Summary Judgment. The court deferred ruling on the motion

and evidence was heard for the next seven days. On May 21st, the appellant's Motion for Summary Judgment was denied. On May 28, 1970, the court overruled appellant's objections and stated: "Plaintiff is entitled to appropriate said right of way and easement under its power of eminent domain, and same should now be condemned to plaintiff's use."

Appellant's first assignment of error states that the court erred in refusing to grant them the right to proceed with discovery by way of interrogatories and they were thereby denied due process of law.

Trial Rule 1 of the Indiana Rules of Procedure states: "Except as otherwise provided, these rules govern the procedure and practice in all courts of the state of Indiana in all suits of a civil nature whether cognizable as cases at law, in equity, or of *statutory origin*. They shall be construed to secure the just, speedy and inexpensive determination of every action." [Emphasis Added] Appellee's right of eminent domain power is contained in Burns Ind. Stat. (1968 Repl.), sec. 3-1713. This right is statutory in origin and is, unless otherwise provided, within the coverage of the Indiana Rules of Procedure. Nowhere do we find any provision exempting eminent domain proceedings from the Indiana Rules. We conclude that parties to an eminent domain proceeding have a right to exercise the right of discovery as enumerated in the Indiana Rules of Procedure.

Having decided that the appellant had a right to use discovery methods under the Indiana Rules, we must now decide whether the lower court's ruling in favor of appellee's Motion to Deny Request for Answers to Interrogatories was proper.

It appears to us, from the record in this case, that appellant cannot ask the indulgence of a trial court when appellant waited until two days before the trial to ask for a continuance for discovery purposes and then waited from January 27th until March 9th to file sixty-four [64] interrogatories. The court's ruling sustaining the Motion to Deny Request for Answers to Interrogatories was made on March 31st. It ap-

pears to us that the court was more than considerate in granting appellant a continuance as an opportunity for discovery and that appellant wasted the court's time and that of the other parties thereafter.

Regardless, however, of that feature, there is no showing in the record that the appellant sustained any prejudice by reason of the court's refusal to require appellee to answer the interrogatories. All papers which were requested were tendered to the appellant. The court took a two day recess to give appellant's attorney time to study any and all documents. In open court appellant's counsel stated: "Your honor, at this time, I have the material I need." By agreement with opposing counsel, arrangements were made for the availability of a technical witness needed to explain the documents. It appears that the questions included in the interrogatories were asked of the witness at trial. Nowhere do we find that the appellants were denied any specific information that would have changed the results of the trial on the objections.

Appellant's second and third assignments of error shall be considered together as they both require a finding of necessity in order to sustain appellee's taking. Appellant's second assignment of error states that the court erred in overruling appellant's Motion for Summary Judgment. Appellant's third assignment alleges that the lower court erred in finding that appellee was authorized and empowered to take appellant's land by virtue of Burns sec. 3-1713-15. Burns Ind. Stat. sec. 3-1713 provides, in part, as follows:

> "*Any corporation organized under the law of the state of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy . . . to the public or to any town or city, . . . is hereby authorized and empowered to take, acquire, condemn and appropriate land, real estate, or any interest therein, for carrying out such purposes and objects together with all accomodations, rights and privileges deemed necessary to accomplish the use for which the property is taken . . ."*
> (Emphasis added)

Appellant contends that based on the testimony of appellee's one witness, the appellee failed to make a showing of any necessity since the evidence showed that I & M would have approximately 20% more kilowatts of electricity than it needs, six years in advance of the stated need. This fact alone does not amount to a showing of lack of necessity on the part of the condemnor electric company.

In many cases this court has recognized that under the statutory provisions of Burns Ind. Stat. (1968 Repl.) sec. 3-1713-15—utilities, "A large discretion is necessarily vested in those condemnors who are vested with the power in determining what property and how much is necessary." *Indianapolis Water Co. v. Lux* (1946), 224 Ind. 125, 64 N. E. 2d 790; and that the condemnor's exercise of such discretion will not be disturbed unless "clear abuse" thereof has been shown. *Indianapolis Water Co. v. Lux, supra; Dahl v. Northern Indiana Public Service Co.* (1959), 239 Ind. 405, 157 N. E. 2d 194; *Guerrettaz v. Public Service Company of Indiana* (1949), 227 Ind. 556, 87 N. E. 2d 721; and *State ex rel. Indiana Dept. of Conservation v. Barber* (1964), 246 Ind. 30, 200 N. E. 2d 638.

It is equally well established that the question of "necessity" under the statute "is not limited by a consideration of absolute or indispensible needs of the railroad" condemnor, and that "necessary land" is that which is "reasonably proper, suitable and useful for the purpose sought." *Eckart et al. v. Ft. Wayne & N. I. Traction Co.* (1914), 181 Ind. 352, 104 N. E. 762; *Indianapolis Water Co. v. Lux, supra.*

In determining what is "necessary land," courts "may, and in proper cases should, consider not only the present needs of the company, but also those likely to arise in the future." *Eckart v. Ft. Wayne & N. I. Traction Co., supra.*

We find an ample showing by the appellee of necessity by virtue of its need to protect against insufficient power during

its "peak" winter months to provide an ample supply of power in order to protect against a potential "blackout" as occurred in New York City in the mid-sixties. Protection against consequences which can result from an electrical "blackout" constitute sufficient necessity to allow appropriation of land for the purpose of constructing facilities which will provide adequate protection. The demands on the use of electricity in the future could never be estimated with total certainty and it would be foolish for this court to deny the right to prepare for the future when technical evidence shows that a failure to adequately provide could have an immobilizing effect on the area appellee is obligated to serve.

Appellant's final assignment of error states that the lower court erred in refusing to admit appellant's Exhibit A into evidence. Exhibit A was a prospectus of the American Electric Power Company, the company which owned 100% of the stock of I & M Electric. There is no showing that the document was ever properly identified or authenticated. Without such a showing there can be no error on the part of the trial court in refusing to admit the evidence.

Judgment of the lower court is affirmed.

Givan, J., concurs in result; Prentice, J., concurs; Hunter, J., dissents with opinion; DeBruler, J., not participating.

## DISSENTING OPINION

HUNTER, J.—I am in full agreement with the majority only insofar as they hold that the Indiana Rules of Procedure apply to Eminent Domain proceedings. Having determined that the Rules of Procedure apply, I shall devote this dissenting opinion to what I understand to be the correct application of these Rules.

On December 10, 1969, appellee filed its complaint for condemnation. Appellants filed objections, and trial of this matter was set for January 29, 1970. On January 27, 1970, appellants filed a Motion for Continuance to enable them to complete dis-

covery. This motion was granted, and trial was set for March 31, 1970. On March 9, 1970, appellants filed sixty-four written interrogatories pursuant to TR. 33. Appellee's Motion to Deny Answers to Interrogatories, filed March 20, was based on the erroneous contention that the Indiana Rules did not apply to Eminent Domain proceedings.

The majority appears to hold that the appellants abused their discovery rights by waiting until twenty-one days before trial to submit the sixty-four interrogatories. However, this issue was not before the trial court, nor is there any evidence in the record which would indicate that the interrogatories could not have been answered within the twenty-one day period.

The majority further states that even if the denial of discovery was erroneous, the appellants were not prejudiced thereby since "all papers which were requested were tendered," and "the questions included in the interrogatories were asked of the witness at trial." The papers tendered, however, were tendered in response to *Subpoena Duces Tecum*, and were not produced until *almost one month after the trial commenced*. It is my contention that neither *Subpoena Duces Tecum* nor the opportunity to examine witnesses at trial have anything whatsoever to do with pre-trial discovery sought pursuant to TR. 33. Indeed, discovery was made available to litigants so that we might eliminate trial by "ambush."

I am of the opinion that appellants have made a prima facie case for reversible error by establishing that they were erroneously denied discovery. There were sixty-four interrogatories submitted to appellee. There is no evidence to indicate that the information sought by the interrogatories would not have assisted appellants in the preparation of their case for trial. Moreover, *there is no definitive way to assess the harm* which results from the denial of the opportunity to prepare for trial. Therefore, it is my contention that once an erroneous denial of discovery has been established, the judgment should be reserved unless it is abundantly clear from the record that the

information sought was made available by other methods before trial.

The value of discovery is made very apparent in the case before us. Appellants were required to subpoena one Mr. Pence, an officer of the appellee corporation, to obtain his presence at trial. Mr. Pence was also required to bring certain documents held by the corporation. These documents consisted mostly of interconnection agreements that Indiana and Michigan Electric Company had with various utilities in other states. Mr. Pence was called to take the stand, and, after doing so, he promptly disclosed that he had no knowledge or understanding of the interconnection agreements in question. Mr. Pence stated that he was the Assistant Secretary and that it was his responsibility only to keep a copy of said agreements in the corporate file. Trial was then recessed from May 18, 1970 to May 21, 1970, to enable appellants to examine the documents. It was also understood that a Mr. Pletcher, an employee of the appellee corporation, would be made available for examination as he had knowledge of the matters relating to the contents of the documents. When the trial resumed, Mr. Pletcher was not called to testify. Evidently, after examining the documents, counsel for appellants must have decided that Pletcher's testimony would have been unavailing.

I submit that this is a very difficult and burdensome way to prepare a case for trial. This was the true waste of the trial court's time. Trial was recessed for three days so that Mr. Pletcher, who was in Canton, Ohio, on business, could be made available for trial, and then appellants "discovered" that his testimony was unnecessary.

On appeal, appellee contends that the sixty-four written interrogatories were voluminous in nature and called for detailed and technical information. Therefore, appellee argues, the trial court was justified in denying discovery as the interrogatories were submitted on a date so near to the time for trial that to require appellee to answer the voluminous interrogatories would necessitate postponement.

In support of this position, appellee refers us to five cases. I will limit my discussion to the two that were decided in the Twentieth Century. In *Heffron* v. *Los Angeles Transit Lines* (1959), 170 Cal. App. 2d 709, 339 P. 2d 567, it was held that to submit fifty-two (52) interrogatories some nineteen days before trial was an untimely course of action, and that it was within the discretion of the trial court to deny discovery. In *Heffron,* the action was commenced on November 2, 1956. A pre-trial hearing was conducted September 25, 1957, at which time both parties stated that they were ready for trial. The only discovery sought related to an examination of a bicycle. Trial was set for November 26, 1957, and at that time both parties appeared and announced that they were prepared to try the case. Due to a congested calendar, the court, on its own motion, ordered the trial continued to February 24, 1958. On February 5, 1958, the plaintiff served the fifty-two interrogatories. In our present case, the action was commenced some eighty-nine days prior to the time appellants filed the interrogatories, while in *Heffron,* over fifteen months had elapsed. Twice, in the *Heffron* case, the plaintiff had announced that he was ready for trial. These facts are simply not present in the case before us. Nor is there any evidence which indicates appellants were making a bad faith attempt to postpone or delay the trial.

Appellee also relies on *Oskar Tiedemann & Co.* v. *United States* (Del. 1959), 172 F. Supp. 609. In *Tiedemann,* the Government attempted to file forty-two sets of interrogatories involving some eight thousand questions on forty-two persons, many of whom were at sea. This was done within one month of the date set for trial. In denying the attempted discovery, the court observed that the Government would not be prejudiced by the denial in that the Government *already possessed full statements taken by a Court Reporter from each and every one of the forty-two witnesses involved.*

The *Heffron* and *Tiedemann* decisions stand for the proposition that it is within the trial court's discretion to deny dis-

covery when it appears that the discovery tools are being used solely to delay or postpone the trial. There is no evidence in the record which would indicate that this proposition has any application in the case at bar.

Indiana and Michigan Electric Company initiated this action. In the absence of any showing of bad faith, a party whose land has been condemned should be given every opportunity to build its defense, determine what information is necessary for its defense, and seek such information from the condemnor. Since the justification for the condemnation was based on electrical power shortages, it is not too surprising that the information sought was of a technical nature. This case presents a situation where counsel for appellants, probably substantially less acquainted with the production and transmission of electrical power than was appellee, was required to acquaint himself sufficiently with this business so that he might determine what information was necessary. More likely than not, it was much more difficult to compile the sixty-four interrogatories than it would have been to answer them.

After arguing that the interrogatories were so "voluminous and oppressive" that they could not possibly be answered in the twenty-one days remaining before trial, appellee then contends that appellants suffered no harm since they had the opportunity to examine the interconnection agreements which were produced at trial. Even if we assume, somewhat illogically, that all of the information sought by the interrogatories was contained in the interconnection agreements, and if we overlook the fact that these agreements were not produced until almost one month after the trial had commenced, it is unreasonable to conclude that the necessary information was gained during the three day trial recess. How can it be said that appellants' counsel, totally unfamiliar with the documents produced, could extract all of this information when appellee has already wholeheartedly asserted that such information could not possibly be produced in three weeks?

Under proper circumstances, discovery can be resisted. TR. 26C provides, in part, as follows:

"Upon motion by any party or by the person from whom discovery is sought, and *for good cause shown,* the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." (my emphasis)

An alternative to TR. 26C is found in TR. 33A which reads, in pertinent part:

"Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. . . . The party submitting the interrogatories may move for an order under Rule 37(A) with respect to any objection to or other failure to answer an interrogatory."

However, these Rules were not utilized by appellee, nor is there any evidence which would indicate that appellee would have been successful had it chosen to proceed in accordance with these Rules.

Therefore, the judgment of the trial court should be reversed.

NOTE.—Reported in 277 N. E. 2d 589.