RUTH ELLIS *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 1-875A145. Filed March 4, 1976.]

*Douglass R. Shortridge, Robert T. Wildman,* of Indianapolis, for appellant.

*John A. Kendall, Kendall, Stevenson & Lowry,* of Danville, *Frank T. Lewis,* of Plainfield, for appellee.

RORERTSON, C.J.—Defendant-appellant Ruth Ellis appeals from the trial court's decision overruling her objections to a complaint in condemnation filed by the plaintiff-appellee Public Service Company of Indiana (PSI).

The issues raised upon appeal are whether the trial court erred in overruling the objections to the condemnation and in sustaining PSI's objections to discovery sought by Ellis.

We affirm.

The record reveals that PSI initiated this cause on September 11, 1974, by the filing of its complaint seeking to take by eminent domain a strip of land diagonally across the farm owned by Ellis to be used as a utility corridor for the erection, installation and maintenance of a high voltage line from southern Indiana to the northern Indianapolis metropolitan area. Ellis filed written objection to the taking, stating that the land sought to be appropriated was not necessary and that the route was selected by PSI in an arbitrary and capricious manner. Ellis further contended that the appropriation constituted a taking of property without due process of law.

The hearing upon the objections was held before the trial court on July 10, 1975. After hearing evidence and the arguments of counsel, the court entered its interlocutory order overruling the objections and appointing appraisers

from which Ellis brings this appeal under IC 1971, 32-11-1-5 (Burns Code Ed.).

PSI is given the power of eminent domain by IC 1971, 32-11-3-1 (Burns Code Ed.) which provides:

"Any corporation organized under the law of the state of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy, . . . to the public or to any town or city, . . . is hereby authorized and empowered to *take, acquire, condemn* and *appropriate land,* real estate or any interest therein, for carrying out such purposes and objects *together with all accommodations, rights and privileges deemed necessary to accomplish the use* for which the property is taken. . . ." (Emphasis added.)

Moreover, IC 1971, 32-11-3-2 (Burns Code Ed.) provides:

"The condemnor may take, acquire, condemn *and appropriate* a fee simple estate, title and interest *in such quantity or amount of land as it deems necessary for its proper uses and purposes,* except that for rights-of-way, the condemnor shall take, acquire, condemn, and appropriate an easement." (Emphasis added.)

Since these specific statutes authorize a public utility to condemn land in such quantity and amount as it deems *necessary,* the necessity of the take is an appropriate objection by a condemnee to a condemnation complaint. However, the question of necessity is, for the most part, to be determined by the condemning utility itself. *Chambers* v. *Public Service Company of Indiana, Inc.* (1975), Ind. App., 328 N.E.2d 478; *Indianapolis Water Company* v. *Lux* (1946), 224 Ind. 125, 64 N.E.2d 790; *Alabach* v. *Northern Indiana Public Service Company* (1975), 164 Ind. App. 471, 329 N.E.2d 645.

Moreover, it is well established that necessity under the statute is not limited to absolute or indispensable needs of the utility, but means that which is reasonably proper and useful for the purpose sought. *Jensen* v. *Indiana & Michigan Electric Company* (1972), 257 Ind. 599,

277 N.E.2d 589; *Lekart, et al.* v. *Ft. Wayne & N.I. Traction Co.* (1914), 181 Ind. 352, 104 N.E. 762.

A utility's determination of necessity must be based upon either a present immediate need or a fair and reasonable future need for the real estate it seeks to acquire. *Indiana & Michigan Electric Company* v. *Schnuck* (1973), 260 Ind. 632, 298 N.E.2d 436. The Supreme Court has denied condemnation when the alleged need is speculative or remote in that there are no immediate plans for the use of the land or only a general intention to use the land at some indefinite point in the future. *Meyer* v. *Northern Indiana Public Service Co., Inc.* (1970), 254 Ind. 112, 258 N.E.2d 57; *County Estates, Inc.* v. *Northern Indiana Public Service Co.,* (1970), 254 Ind. 108, 258 N.E.2d 54.

The condemning authority's exercise of its power may not be prevented unless a clear abuse of discretion is shown. *Guerrettaz* v. *Public Service Company of Indiana* (1949), 227 Ind. 556, 87 N.E.2d 721. As clearly set forth by our Supreme Court:

> "The statute vests discretion in the appellee, utility, herein, to take or appropriate property for public use, and if in its judgment the property herein sought to be appropriated was necessary to distribute electric energy to the public, appellee had the right to condemn, and its judgment therein cannot be questioned or superceded by the courts except for fraud, capriciousness or illegality." *Dahl* v. *Northern Ind. Public Service Co.* (1959), 239 Ind. 405, 157 N.E.2d 194; *See also: State ex rel. Indiana Dept. of Conservation* v. *Barber* (1964), 246 Ind. 30, 200 N.E.2d 638.

Thus, the persons objecting to the condemnation must establish fraud, capriciousness, or illegality in the utility's determination of necessity.

The proposed taking may be challenged as arbitrary, capricious, and fraudulent, both as to the need for the land, *Dahl* v. *Northern Ind. Public Service Co., supra; Meyer* v. *Northern Indiana Public Service Co., Inc. supra,* and the selection of the route, *Guerrettaz* v. *Public Service Co. of Indiana, supra.*

Ellis raises both objections below and raises them again for purposes of this appeal.

The record in the present case reveals the following facts.

NEED FOR THE ROUTE

PSI was constructing a new generating plant in Gibson County scheduled to be in operation by April 1, 1976. The plant was designed to serve the electric needs of 800,000 people in the Indianapolis area. The need for the additional generator was determined from studies which projected an 8% to 10% annual increase in the demand for electricity in the area to be served. The testimony showed that the present plant and equipment was adequate to satisfy the present demand for electricity, but additional generating capacity was needed to assure an adequate reserve capacity and to supply future increased needs. To transport the electricity, the utility needed the 345,000 volt transmission line for which condemnation was sought in the present case. Moreover, if the transmission line was not ready at the time the construction of the generator was completed, the generator could not function.

SELECTION OF THE ROUTE

Mr. Zimmerman, who was involved in selecting the actual route, testified that the selection process was basically a straight line approach. He stated that the routes chosen were never on exact straight line from one point to another, but that they were as close as reasonably possible to a straight line or direct route. Mr. Zimmerman related in detail the selection process. He stated that the process began by establishing where the transmission line was to begin and where it would end. A straight line route was then marked on a standard Indiana road map. The route was then worked out by the means of United States geological maps and surveys and by actual inspection of the proposed route by automobile to check the accuracy of the maps. Changes were made in the

purposed route to avoid buildings, roads or other construction subsequent to the making of the maps. Aerial photographs were made of the entire route to get a final idea of the right of way needed for the transmission line.

Zimmerman further testified that the route selected was reasonable and proper from the standpoint of sound and prudent electrical engineering and that the route was the most practical and reasonable under the circumstances.

From the evidence presented it does not appear that the action of PSI was arbitrary or capricious either as to the need for the right of way or the selection of the route. Nor does it appear that the need for the right of way was remote or speculative. The trial court was correct in overruling Ellis' objections to PSI's condemnation complaint.

Counsel for Ellis urges this Court to use this case as a vehicle to change the standards by which an electric utility makes it's choice of power line right-of-way. It is obvious by our foregoing discussion that we choose not to make such a change in the law, assuming it is within our prerogative to do so. This is not to say, however, that the arguments presented are not without merit, but we believe they are more suited for the legislative forum.

Ellis further contends that the trial court erred in sustaining PSI's objections to discovery sought by Ellis.

Ellis submitted several interrogatories to PSI, including the following:

"Interrogatory #30—What is the status of negotiations between Public Service Company of Indiana, Inc. and Indianapolis Power and Light Company concerning merger? Interrogatory #31—When do you anticipate this merger will take place?

Interrogatory #32—Does Indianapolis Power and Light Company have facilities if extended to service the area the proposed transmission lines are to service?

PSI objected to these interrogatories as follows:

"1. The answers to such interrogatories relate to matter or material not relevant to the subject matter involved in the pending action.

2. The answers to such interrogatories can in nowise be reasonably calculated to lead to the discovery of admissible evidence.

3. Such interrogatories do not relate to any matters which can be inquired into under Trial Rule 26(B) of the Indiana Rules of Procedure.

\* \* \*

5. Specifically, Interrogatories Numbered 30, 31, and 32 are totally irrelevant as to any issue now pending or which may hereafter be formed in this eminent domain proceeding."

Ellis then filed a motion to compel discovery, Ind. Rules of Procedure, Trial Rule 37(A), but the court sustained PSI's objections. On appeal, Ellis contends that the court erred in sustaining those objections.

Parties to an eminent domain proceeding have the right to use the discovery methods provided by the Indiana Rules of Civil Procedure. *Jensen* v. *Indiana & Michigan Electric Company* (1972), 257 Ind. 599, 277 N.E.2d 589. Indiana Rules of Procedure, Trial Rule 26(B) governs the scope of discovery:

"(B) Scope of discovery. Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Under this rule, a party is entitled to discovery of any information, not privileged, which is relevant to the subject matter of the pending action. In addition, the rule requires that the information sought be either admissible, or reasonably calculated to lead to other evidence which would be admissible. As stated by Judge Lybrook:

> "Thus, interrogatories need not be limited to eliciting evidence that may be admissible at trial, but rather if the interrogatory is germane and there is some reasonable possibility that the answer will lead to the discovery of admissible evidence, the interrogatory is not objectionable." (Citations omitted.) *Chambers* v. *Public Service Company of Indiana, Inc.* (1975), Ind. App., 328 N.E.2d 478, 482.

Ellis contends that the information concerning possible merger between the two electric utilities was relevant to the subject matter of the case, i.e. the need for the land sought through condemnation. Ellis argues that the information sought might have shown that merger of the two utilities was imminent and that upon merger PSI could use one of IPALCO's existing transmission lines rather than acquiring a separate, additional route of its own. Ellis concludes that since this evidence would have been relevant to the issue of necessity, the interrogatories were, at least, reasonably calculated to lead to the discovery of admissible evidence and proper under TR. 26(B).

PSI makes several arguments in response, the first being that virtually all of the available information concerning merger negotiations was disclosed in response to Ellis' request for admissions, TR. 36. Further PSI asserts that they are required to demonstrate the necessity for the condemnation based upon their own needs and not those of another, independent utility. Finally, PSI states that the possibility of merger is, as yet, so remote and speculative that such evidence would not have been admissible at the hearing.

We do not believe that the trial court's refusal to issue an

order compelling PSI to answer the interrogatories was reversible error.

The interrogatories were not the only discovery method used by Ellis in an attempt to discover information concerning merger possibilities. Ellis also served upon PSI a request for admissions, Ind. Rules of Procedure, Trial Rule 36, and included therein several documents, articles and letters pertaining to possibilities of merger. In its response, PSI admitted that statements concerning possible merger, contained in those materials, were true and reliable. Thus, Ellis was successful in obtaining a great deal of information relevant to the subject of merger.

Moreover, PSI was required to demonstrate a present necessity for the proposed condemnation based upon its own individual needs and not those of another utility. Under Indiana law, a utility may not base its proof upon the circumstances of another utility even when there is a close connection between the two, e.g. the relationship of parent-subsidiary.

> "In addition there is a great deal of evidence of the needs of the American Electric Power Company of which the Indiana & Michigan Company is a subsidiary, but American Electric Power is not a party plaintiff in this case. Indiana & Michigan cannot stand upon the needs of its parent corporation, but must, instead, carry the burden of proof on the basis of its own individual needs." *Indiana & Michigan Electric Company* v. *Schunck* (1973), 260 Ind. 632, 635-36, 298 N.E.2d 436, 439.

Finally, Ellis relies upon *Chambers* v. *Public Service Company of Indiana* (1975), Ind. App., 328 N.E.2d 478, in his argument that the court erred in refusing to compel discovery. In *Chambers,* this court found that certain information sought through discovery was relevant as evidence of whether or not the condemning utility had made a good faith offer to purchase the desired property, a condition precedent to the right to condemn. *City of Greenfield* v.

278

*Hancock County R.E.M.C.* (1974), 160 Ind. App. 529, 312 N.E.2d 867. The information sought in that case was quite different from something so remote and speculative as a possible merger of two public utilities.

The trial court's refusal to compel discovery was not reversible error.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 342 N.E.2d 921.